*In the Matter of the Disbarment of* CLEMENT L. WILSON.

No. 15,903. (100 Pac. 635.)

SYLLABUS BY THE COURT.

1. ATTORNEYS — *Disbarment.* The evidence examined and held to support a judgment of disbarment.

2. ——— *Wrongful Detention of Money — Non-professional Business Transaction.* Where a lawyer accepts employment to act for some one else in a business transaction, such as the sale of a tract of land, in the course of which he receives money belonging to his employer, his wrongful detention of it is a sufficient ground for his disbarment, although he may not have been called upon to give legal advice or to take part in litigation.

Appeal from Thomas district court; CHARLES W. SMITH, judge. Opinion filed March 6, 1909. Affirmed.

*T. L. Bond, T. F. Garver,* and *R. D. Garver,* for the accused.

*R. A. Lovitt,* for the prosecuting committee.

The opinion of the court was delivered by

MASON, J.: Clement L. Wilson brings this proceeding to review a judgment of the district court disbarring him as an attorney from the practice of law. The charges against him upon which he was found

*In re* Wilson.

guilty were, in substance, (1) that, having received the price of a tract of land which he had sold for one J. H. Foote, he withheld $6.56 thereof, being the amount of current taxes, representing to his client that it was necessary for the seller to pay them, when in fact he had already exacted a similar amount from the buyer for that purpose, and (2) that in the same transaction he deceived his client regarding the facts connected with a damage claim made by the buyer against the seller, with the purpose of withholding a part of the purchase-price paid to him. No special findings were made, and the question for consideration is whether there was evidence to support the judgment.

The purchaser of the land was H. C. Lovelace, the principal witness against the defendant. The deed was delivered to him December 5, 1902, although it was dated in October. He paid the amount of the taxes of that year to Wilson. In remitting the proceeds of the sale to his client Wilson retained a like amount, stating that by reason of having given a warranty deed the seller was liable for the taxes. The taxes in fact were not paid by any one at that time. The property was sold for non-payment of taxes the next September, and a few weeks later Lovelace redeemed it from the sale.

To explain this situation Wilson testified that he intended to pay the taxes with the money retained for that purpose out of the purchase-price; that until the day of the trial he had always supposed that he had done so; that he must have forgotten it; that the deed was originally made out to a man named E. F. Rathbun; that by agreement of the parties the name of Rathbun was erased and that of Lovelace inserted in its place; that the $6.56 paid by Lovelace to Wilson for the taxes was turned over to Rathbun for his services in the matter—that this was what he was to have for handling the land.

On the other hand Lovelace denied all knowledge of the connection of Rathbun with the transaction, or of

the existence of any person of that name, but said Wilson had told him that some other name than his own had originally been written in the deed. He admitted that he had never complained to Wilson of the non-payment of the taxes.

It seems entirely probable that the failure of Wilson to pay the taxes was the result of inadvertence, and the trial court doubtless took this view of the matter. But the admitted facts show that he did retain enough of his client's money to cover the taxes, after he had received a similar amount from the buyer apparently for that purpose. The question whether he was guilty of misconduct in this connection depends upon the truth of his statement that he paid to Rathbun the $6.56 received from Lovelace. Rathbun himself was not produced, nor was Wilson's testimony in this respect corroborated by any other direct evidence. It was explicitly contradicted by that of Lovelace. The $6.56 was paid by Lovelace at the time of the delivery of the deed, and Wilson gave him a receipt describing it as the amount of taxes against the land. Nothing was said in the receipt of an intention to devote it to any other purpose, and this circumstance is obviously entitled to some weight in resolving the conflict of evidence. A letter written by Lovelace showed animosity toward Wilson and such a mental attitude in other respects as to justify viewing his testimony with some suspicion. There were other features of the evidence bearing in a general way upon the credibility of the witnesses, but what has already been said exhibits substantially what was before the trial court. Clearly it was a fair question for the determination of that tribunal whether or not Wilson had acted in good faith. Therefore the finding against him on the first charge was supported by competent evidence, and can not be disturbed by this court.

The suggestion is made in behalf of the accused that so far as relates to this charge he was acting as a real-

estate agent and not as a lawyer. The misconduct
most frequently relied upon as a ground for disbarment
is the retention by an attorney of money collected for
his client. (See 4 Cyc. 907; 3 A. & E. Encycl. of L.
307.) Money collected upon the sale of land stands
upon the same footing as though collected on a note or
other claim without suit. And whenever one who is in
fact a lawyer accepts employment to act for some one
else in a business transaction in the course of which he
receives money belonging to his employer, his wrong-
ful detention of it is a sufficient ground for his disbar-
ment, even although he may not have been called upon
to give advice on legal questions or to take part in
litigation. Such conduct would justify excluding him
from the practice of the law irrespective of the statute,
as it would certainly be a just cause of refusing an ap-
plication for admission to the bar. (*In re Smith*, 73
Kan. 743, 749, 85 Pac. 584, and cases there cited; *In re
Wilson, ante*, p. 450.)

With reference to the second charge, these facts are
undisputed: When the sale was closed Lovelace made
to Wilson a claim against Foote on account of having
had a mare killed by falling into an open well on the
land, making an affidavit that the animal was worth
$150. A writing was prepared for Lovelace by an-
other attorney and delivered to Wilson purporting to
assert a lien on the purchase-money in his hands, and
warning him that he would be held liable if he should
remit it without settling the claim for the mare. Wil-
son wrote to Foote inclosing this notice, and saying
that while he wanted to remit the money he did not
want a lawsuit himself and so would have to keep it
until furnished with an indemnifying bond. Later he
wrote recommending a settlement of the claim for $100,
saying that he had fully investigated the matter and had
found that the mare, which was a very valuable one,
worth much more than the amount demanded, had in
fact fallen into a well upon the land. Foote authorized

a settlement at $100. Wilson deducted .from the purchase-money this $100 and the $6.56 for taxes, as well as charges for commission and services as an attorney, which are not questioned, and caused the balance to be remitted. Lovelace obtained $10 out of the transaction, which was paid to him by A. P. Tone Wilson, a brother of the accused, to whom he gave a receipt acknowledging full satisfaction of his claim, but not mentioning the amount actually received. Afterward a demand was made in behalf of the estate of Foote for the return of the money and some one repaid it.

A. P. Tone Wilson testified that his brother, being about to start on a business trip, gave him $100 to pay to Lovelace; that he gave him $10 in cash and retained $90 himself, because Lovelace was owing him that amount for legal services, merely reporting to his brother that he had made the settlement and handing him the receipt; that he had repaid the money to the Foote estate because he wanted to save his brother from embarrassment, feeling that he was responsible for the controversy that arose regarding it.

Lovelace testified to a number of matters that if true showed that the accused had been unfaithful to his client—that he had misrepresented the situation to him in order to induce him to pay more than was necessary to settle the claim for the dead mare. For instance, he professed to have told Wilson that the mare was worth only $150 and that he would accept $50 to settle the matter, whereas Wilson wrote Foote that he did not think a settlement could be had for less than $100, and that the owner justly claimed that the mare was worth more than the $150 claimed. In the appellant's brief it is said that Lovelace afterward denied having made the statement regarding the $50, but what he seems to have intended by the denial referred to was to disavow having made such a statement to A. P. Tone Wilson. It is unnecessary to rehearse the other assertions made by Lovelace tending to show the bad faith of Wilson.

Those already mentioned are typical. Wilson contradicted them all, and the whole question for the consideration of the trial court on this branch of the case was whether his version of the transaction or that of Lovelace was to be accepted. There was other evidence of more or less value in solving the issue, but the situation presented is that of a direct clash between the witnesses upon the vital matter in controversy. The district court, having the parties before it, was evidently persuaded that Lovelace's story was essentially true. Whether right or wrong, that conclusion is binding on this court, which can only affirm the judgment based thereon.

Complaint is made that a part of the evidence admitted was incompetent. There is nothing in the record that shows affirmatively that the action of the court was influenced by any evidence to which objection is made, and as no jury was present the presumption must be indulged that any of it that was incompetent was finally disregarded. (*McCready v. Crane,* 74 Kan. 710, 88 Pac. 748.)

The judgment is affirmed.