*In re* RADFORD.

1. CERTIORARI — APPEAL AND ERROR — QUESTIONS REVIEWABLE — DISBARMENT PROCEEDINGS.

The writ of certiorari to review proceedings for the disbarment of an attorney at law (3 Comp. Laws, § 10497), brings before the Supreme Court for review only questions of law, not of fact; and the court will examine the evidence only to determine whether it justifies the finding of the court as a legitimate inference therefrom.

2 ATTORNEY AND CLIENT—DISBARMENT OF ATTORNEY—DEMURRER —PETITION.

General and special demurrers to a petition for disbarment that charged respondent with refusing to account to the probate court as executor, with disobedience to specified orders of the court, with converting property of the estate to his own use, and other misconduct, were not sustainable on the

theory that such petition was not sufficiently clear and specific, and was properly overruled.

3. SAME.

Formal allegations charging specifically acts of malpractice, etc., are not essential to the sufficiency of the petition, and if fair notice is given to the respondent of the nature of the charges and a reasonable opportunity for defense afforded, the proceedings are not open to objection.

4. SAME—PRACTICE—TAKING TESTIMONY.

Testimony taken at the hearing before the circuit court was not required to be read over to and signed by the respective witnesses.

5. SAME—EVIDENCE—UNPROFESSIONAL CONDUCT—ESTATES OF DECEDENTS—EXECUTORS AND ADMINISTRATORS.

Evidence showing that an attorney at law, appointed as executor of an estate, failed to file an inventory and account, disobeyed numerous orders of the probate court without excuse, retained funds of the estate in his hands for upwards of eight years, invested money of the estate in his own name in real property which he mortgaged and lost upon foreclosure proceedings, and was guilty of deceit towards the persons interested in the estate, sufficiently supports a finding that the attorney was guilty of unprofessional and immoral conduct requiring his disbarment.

6. SAME—CONDITIONS PRECEDENT.

Nor was it necessary that he be first convicted of criminal misconduct.

7. SAME—FIDUCIARY RELATION.

When an attorney has forfeited his claim to the office by such misconduct, professional or nonprofessional, in or out of court, as to render him unworthy, unfit, or unsafe to be entrusted with the duties and responsibilities of his profession, the court is justified in removing him from the bar.

Certiorari to Wayne; Rohnert, Mandell, and Murfin, JJ. Submitted January 31, 1912. (Docket No. 23.) Decided February 10, 1912.

Petition by Charles T. Wilkins and Charles W. Casgrain, *amici curiæ,* for the disbarment of George W. Radford. A judgment of disbarment is reviewed by respondent on writ of certiorari. Affirmed.

*Thomas A. E. Weadock*, for appellant.

*C. A. Kent* and *William G. Fitzpatrick*, *amici curiæ*.

STONE, J. This is a proceeding for the disbarment of George W. Radford, who for many years has been a member of the bar in the courts of this State. The proceeding was taken at the instance and on the recommendation of the Detroit Bar Association, and has been conducted under the direction of the circuit court for the county of Wayne. That court appointed two members of the bar, as friends of the court, to make, prefer, present, and prosecute charges against Mr. Radford, hereinafter called the respondent.

The petition of the friends of the court is very lengthy, and, together with the exhibits attached thereto, covers more than 100 pages of the printed record. Its great length renders it inexpedient that it be set forth in full here. It is very explicit and full in its charges and specifications, and was duly verified upon information and belief. We have set forth the specifications which we deem material, as follows:

"(A) He wilfully and knowingly and unlawfully failed and neglected to file in the probate court for the county of Wayne, within the time required by law and by the conditions of his bond as such executor, and by an order duly and lawfully made by said probate court, any account, or inventory, so called, of the estate, real or personal, belonging to the estate of the said John E. Oxnard, deceased, which, of great value, had within that time come into his (said George W. Radford's) possession as such executor; and he wilfully and knowingly and unlawfully so continued in his said failure and neglect for eight years after he had been appointed and qualified as such executor, as is hereinabove, in paragraph numbered third hereof, also set forth.

" (B) He wilfully and knowingly and unlawfully failed and neglected to render to said probate court, within the time required by law and by the conditions of his bond as such executor, and by an order duly and lawfully made

by said probate court, any account of his administration of the estate of the said John E. Oxnard, deceased, although during that time he had, as such executor, come into the possession of large amounts of property, both real and personal, belonging to said estate, and had made large disbursements thereof, and he wilfully, knowingly, and unlawfully so continued in his said failure and neglect for eight years after he had been appointed and had qualified as such executor, as is hereinabove, in paragraph numbered third hereof, also set forth.

"(C) He wilfully and knowingly and unlawfully and contemptuously, and without any good or lawful excuse, violated and disobeyed the lawful orders of the probate court of the county of Wayne, duly made and entered by and in said probate court the 10th day of March, A. D. 1908, and the 26th day of May, A. D. 1908, hereinabove referred to, and of which orders he had due notice, ordering and requiring him, within the times in such orders stated, to file in said court an account, or inventory, of said estate, and to render to said probate court his account as such executor, and an account of his receipts and disbursements as such executor, although, when such orders were made, he had, as such executor, come into possession and was then in possession of large amounts of property, both real and personal, belonging to said estate, and had made large disbursements therefrom; and, although a warrant was, on the 22d day of July, A. D. 1908, issued by and out of said probate court for his arrest and imprisonment for failure to obey, perform, and comply with the said order of the 26th day of May, A. D. 1908, he knowingly and wilfully and unlawfully and contemptuously, and without any good or lawful excuse, filed no inventory or account of such estate, and rendered no account of his receipts or disbursements as such executor until the 2d day of September, A. D. 1908, and after he had been removed from his office as such executor, as is hereinabove, in paragraph numbered third hereof, also set forth, and he, by his said actions, was and is guilty of wilful contempt of said probate court."

"(E) He has wilfully and knowingly and unlawfully and contemptuously disobeyed and violated a lawful order of the probate court of the county of Wayne, duly and legally made and entered by and in said probate court the 15th day of May, A. D. 1909, and hereinabove referred to, and another lawful order of said probate court, duly made and entered by and in said probate court the 14th day of

July, A. D. 1909, and also hereinabove referred to, and from neither of which orders has any appeal been taken, or claimed, or noticed, and has wilfully and knowingly and unlawfully failed, neglected, and refused, and so continues to so neglect and refuse, to pay to Elizabeth R. Oxnard, and to the Security Trust Company, of Detroit, Mich., and to the county treasurer of Wayne county, the persons in such orders named, or to any of such persons, or to any one on behalf of such persons, or on behalf of any of them, the sums of money, or any part of the sums of money, by said probate court, and in and by such orders, then found due to such persons, respectively, from said George W. Radford as such executor, as aforesaid, and which said George W. Radford was by said probate court, and in and by such orders, then and there ordered to pay to such persons; and he (the said George W. Radford) has wilfully and knowingly and unlawfully neglected and refused, and so continues to so neglect and refuse, to turn over to said Emmet A. Perry, administrator *de bonis non* with the will annexed of said estate, and in such order of the 15th day of May, A. D. 1909, mentioned, the uncollected assets stated in said George W. Radford's said account, in Exhibit C thereof, or any part thereof, which uncollected assets the said George W. Radford was by said probate court, and in and by said last-mentioned order, ordered to so turn over to said Emmet A. Perry, as is hereinabove, in paragraph numbered fourth hereof, also set forth."

"(J) He wilfully and knowingly and unlawfully, in and by his testimony given in said probate court on the examination of his said account as such executor as aforesaid, sought to deceive and mislead said probate court, and to deceive and mislead and cheat and defraud the persons interested in said estate, and in the insurance moneys, so called, hereinabove mentioned, by knowingly and intentionally charging to the said estate and claiming credits to himself, as such executor and trustee aforesaid, for certain practically worthless investments which he claimed to have made from and out of the funds of said estate and from and out of said insurance moneys, and for and on behalf of said estate and for and on behalf of the persons interested in said insurance moneys, so called, which said investments, as he (the said George W. Radford) then and there well knew, he did not lawfully make from or out of said funds or said insurance moneys, and

did not make for or on behalf of said estate, or for or on behalf of the persons interested in said insurance moneys, and for which investments he was entitled to no credit as such executor or trustee, all as he (the said George W. Radford) then and there, when he gave his testimony aforesaid, well knew, as is hereinabove, in paragraph numbered eleventh hereof, also set forth.

"(K) If he, as such executor and trustee of and under the said last will and testament of John E. Oxnard, deceased, made from and out of the funds of said estate, or from and out of the said insurance moneys, so called, and for and on behalf of said estate, or for and on behalf of the persons interested in said insurance moneys, so called, any of the investments hereinabove, in paragraph numbered eleventh hereof, mentioned, and which he claimed in his said testimony given in said probate court, on the examination of said account as such executor, that he did so make, as is hereinabove, in paragraph numbered eleventh hereof, set forth, then he (the said George W. Radford) wilfully and knowingly and fraudulently and unlawfully sought to deceive and mislead said probate court, and to deceive and mislead and cheat and defraud the said estate of John E. Oxnard, deceased, and the persons interested therein, and the persons interested in said insurance moneys, so called, when he failed and neglected to state in his said account as such executor the investments so made, and when he failed and neglected to credit said estate in such account, or otherwise, with said investments and with the moneys that he received on account thereof, and when he failed and neglected to credit the persons interested in said insurance moneys with such investments and with the moneys received on account thereof, as hereinabove, in paragraph numbered eleventh hereof, set forth.

"(L) He has wilfully and knowingly and unlawfully and fraudulently, and with intent to defraud the said estate and to cheat and defraud the persons interested in the funds and assets thereof, misappropriated and converted and applied to his own use a large sum of money, to wit, the sum of twenty-one thousand six hundred and eleven dollars and thirty-four cents ($21,611.34), which was received by him, and which came into the hands and possession and control of him (the said George W. Radford), as the executor of the last will and testament of the said John E. Oxnard, deceased, and which was a part of

the funds and assets of said estate, as is also hereinabove set forth.

"(M) He, as such executor, knowingly received large sums of money belonging to the funds and assets of said estate for which he wilfully and knowingly and fraudulently neglected and refused to render any account, as by the said probate court he was ordered and required to do.

"(N) He knowingly and wilfully and fraudulently omitted from his said inventory of said estate, so filed in said probate court, as aforesaid, property which came into his possession as such executor.

"(O) He knowingly and wilfully and fraudulently charged and stated in his account as such executor as disbursements large sums of money, which, as he well knew, he did not lawfully disburse as such executor.

"(P) He was by the Honorable Edgar O. Durfee, judge of probate of the county of Wayne, lawfully appointed executor of and under the last will and testament of John E. Oxnard, deceased, as aforesaid, and as such executor collected goods, chattels, money, and effects of the said deceased, of great value, as above set forth, and still has such goods, chattels, money, and effects in his hands, possession, and control, and he wilfully and knowingly appropriated the same to his own use, and he has been, to wit, by an order entered by and in said probate court for the county of Wayne on the 15th day of May, A. D. 1909, and hereinbefore referred to, and a copy of which is hereto attached and marked 'Exhibit I,' ordered by the said judge of probate forthwith to deliver to his successor in trust and to the persons lawfully entitled thereto, and in such order mentioned, all the goods, chattels, money, and effects of the deceased in his (the said George W. Radford's) hands, and he (the said George W. Radford) has wilfully omitted, neglected, and refused for 60 days to obey said order, and, although 60 days have elapsed since said order was made, he still neglects and refuses to deliver said goods, chattels, money, and effects of the said deceased as he was and is in and by said order commanded, and he (the said George W. Radford) has thereby, and by his said neglect and refusal, committed the crime of embezzlement."

On the filing of this petition, an order to show cause, directed to the respondent, was duly signed and entered. Thereafter, on the 9th day of September, 1909 copies of

the petition, charges, and specifications, and the order to show cause entered thereon, were duly served upon the respondent personally; and on September 14, 1909, the respondent, through his attorney, filed herein and served upon the friends of the court general and special demurrers to the petition. We shall have occasion to refer to these demurrers; but, as the same points there involved are discussed by respondent's counsel upon the final hearing, we do not deem it necessary to insert the demurrers here at length.

On September 25, 1909, the court overruled the demurrers, and ordered the respondent to file and serve his answer within 10 days. Thereafter respondent applied to this court for a writ of certiorari to review the order overruling his demurrers to the petition, which application was denied by this court. *In re Radford*, 159 Mich. 91 (123 N. W. 546). Afterwards, and on December 23, 1909, the respondent's answer was filed and served. This answer denies the material allegations of deceit, fraud, and malpractice charged in the petition.

On March 14, 1910, the taking of testimony on the issue joined on the petition and answer was begun before one of the circuit judges. At the conclusion of the testimony offered by the petitioners, the respondent moved to dismiss the proceedings for numerous reasons, among others, that the evidence did not support the allegations of the petition, and the respondent at first declined to offer any testimony. Later the respondent offered testimony which was received, the taking of which occupied many days, beginning June 16, and ending June 27, 1910. The case was argued and submitted before three of the circuit judges, and time was given to file briefs. On July 21, 1910, after filing an opinion, certain findings were entered in the journal of the court, and a formal judgment of disbarment was entered. These findings and judgment were as follows:

"STATE OF MICHIGAN,

"In the Circuit Court for the County of Wayne.

"At a session of said court continued and held at the courthouse in the city of Detroit on the 21st day of July, A. D. 1910.

"Present: Hon. Morse Rohnert, Hon. Henry A. Mandell, and Hon. James O. Murfin, Circuit Judges.

"In the Matter of George W. Radford, an
Attorney at Law.

"(Misc. No. 211.)

"This matter coming on to be heard in open court on the testimony in support of the petition herein offered by the friends of the court and the testimony offered by the respondent and the testimony of the friends of the court in rebuttal, and the matter having been duly argued by counsel for the respective parties, and the court being fully advised in the premises and after due consideration having been given to the matter, and it appearing to the court from the evidence taken herein that George W. Radford, an attorney at law, has been guilty of the charges of unprofessional conduct made against him, and it appearing from the evidence, the court now here finds that the said Radford wilfully, knowingly, and unlawfully failed and neglected to file in the probate court for the county of Wayne within the time required by law and the conditions of his bond as executor of the will of John E. Oxnard, deceased, and by orders duly and lawfully made by the said probate court, any account or inventory of the estate, real or personal, belonging to the said Oxnard, which had come into his (said George W. Radford's) possession as executor, and that he (said Radford) wilfully, knowingly, and unlawfully continued in such failure and neglect for eight years after he had been appointed and qualified as such executor; that said George W. Radford wilfully, knowingly, and unlawfully failed and neglected ro render to said probate court, within the time required by law and by the condition of his bond as such executor, and by the lawful orders of said probate court, any account of his administration of the estate of John E. Oxnard, deceased, and that during the time of such failure and neglect there had come into the possession of said George W. Radford large amounts of property, both real and personal, belonging to said estate; that said Radford had made large disbursements from the

funds of said estate, and that said George W. Radford wilfully, knowingly, perversely, and unlawfully continued in his said failure and neglect to render accounts of his administration for the period of eight years after he had been appointed and had qualified as such executor; that he has wilfully, knowingly, and contemptuously, without any good or lawful excuse, violated and disobeyed the lawful orders of the probate court for the county of Wayne, requiring him (said George W. Radford) to file in the said probate court accounts of his administration of and an inventory of the assets and property of the estate of John E. Oxnard, deceased, and the said George W. Radford has knowingly, wilfully, and perversely disobeyed and violated the said lawful order of the probate court for the county of Wayne, made and entered in said court on the 17th day of November, 1908, requiring that he (said Radford) file his bond as trustee under the last will and testament of the said John E. Oxnard, deceased, and that at the time of such failure to file such bond he (said Radford) was in possession of large amounts of property which he was holding as trustee under said will; that the said Radford knew and had personal knowledge of the requirements of the provisions of said order requiring him to file a bond as such trustee, and that he wilfully, knowingly, and perversely continued and still continues to retain possession of said trust property under said will; that said George W. Radford wilfully, knowingly, and unlawfully disobeyed the lawful order of the probate court for the county of Wayne, duly and legally entered by and in said probate court on the 15th day of May, 1909, and another lawful order of said probate court on the 14th day of July, 1909, requiring the said Radford to turn over forthwith and pay over to one Elizabeth R. Oxnard the sum of $5,537.16, being the balance due from said George W. Radford on the said 15th day of May, 1909, to said Elizabeth R. Oxnard, as executor of the will of John E. Oxnard, deceased, and to forthwith turn over to the Security Trust Company, of Detroit, Mich., successor or trustee of the estate of John E. Oxnard, deceased, the sum of $15,904.19, with interest thereon from said 15th day of May, 1909, as required by said order of the probate court of July 14, 1909, and that said failure to pay said sums of money, respectively, still continues, and that said George W. Radford has not to the date hereof paid the same to the said several parties, nor has

he paid any part thereof; that said orders of the probate court were not appealed from, and that no good and sufficient reason has been given by said Radford why said sums of money have not heretofore been paid to their rightful and lawful owners; that the said George W. Radford has wilfully, fraudulently, and unlawfully, and with intent to defraud the estate of the said John E. Oxnard, deceased, and to cheat and defraud the persons interested in the funds and assets thereof, misappropriated and converted and applied to his own use, to wit, said George W. Radford's use, large sums of money, to wit, $20,000 and upwards, which was received by him and which came into his possession and control as the executor of the last will and testament of the said estate of John E. Oxnard, deceased; that he (the said George W. Radford) did wilfully, knowingly, and contemptuously, in and by his sworn testimony given in the said probate court for the county of Wayne on the occasion of the examination of his said account as executor of the will of said John E. Oxnard, deceased, seek to deceive and mislead and cheat and defraud the persons interested in said estate and in certain moneys then and theretofore in the hands of said Radford, known and called 'insurance moneys,' which were and are the proceeds of certain insurance policies on the life of said John E. Oxnard, deceased, by knowingly, intentionally, falsely, and fraudulently charging to the estate of said John E. Oxnard, deceased, and to the insurance moneys, so called, and claiming credit to himself as such executor and as trustee, certain practically worthless investments, to wit, investments in real estate in the city of Detroit, known as 171 Fort Street West, and certain other real estate situate on the northwest corner of Clairmont and Woodward avenues in the said city of Detroit, and divers and sundry other investments, all of which said alleged investments were in the name of said George W. Radford, individually, and which said alleged investments he claimed to have made from and out of the funds of the estate of John E. Oxnard, deceased, and from and out of said insurance moneys, and for and on behalf of said estate, and for and on behalf of the persons interested in said insurance moneys and all of which said investments, as he (the said George W. Radford) then and there well knew, he did not make and from and out of said funds or said insurance moneys, and did not make

for and on behalf of said estate, or for and on behalf of the persons interested in said insurance moneys, and for which investments he was entitled to no credit as executor and trustee, as he (the said George W. Radford) then and there, when he gave his testimony, as aforesaid, well knew; the said George W. Radford, as an attorney at law, and as an individual, in connection with his dealings with the estates of Frances E. and Alfred Chesebrough and with one George L. Chesebrough, the administrator of said estate, has been guilty of unlawful, immoral, and unprofessional conduct, in that, after having caused the legal title of the real estate in the city of Detroit, known as No. 171 Fort Street West, to be taken in his name, for the benefit and advantage and as trustee of the said George L. Chesebrough and others, such title being taken with the knowledge and consent of the said George L. Chesebrough, he (said George W. Radford) did thereafter assert and claim absolute ownership in himself of said real estate, and did deny, dispute, and repudiate the interest and estate of George L. Chesebrough in and to said real estate and the right of the said George L. Chesebrough to an account, and in that he (the said George W. Radford), although in possession of certain moneys belonging to the estate of said Frances E. Chesebrough and said Alfred Chesebrough, which he (said Radford) claimed to have disbursed from time to time, and although he (said Radford) came into possession and received large sums of money as the proceeds of a certain mortgage executed by said Radford in his name on said real estate last above mentioned, and of large sums of money as the rents of said real estate No. 171 Fort Street West, Detroit, and certain other large sums of money as the proceeds of the sale of two certain lots or parcels of real estate at one time belonging to the estate of Frances E. Chesebrough, and located on Kirby avenue in the said city of Detroit, he (said George W. Radford) wilfully, perversely, unlawfully, fraudulently, and deceitfully omitted, neglected, and refused to render to the said George L. Chesebrough an accounting or an account of said trust, and the said George W. Radford was repeatedly requested to furnish said accounting, or account by the said George L. Chesebrough and his agents and representatives; that in other respects and particulars, as well as for the reasons stated in the findings aforesaid, said George W. Radford has been and is guilty of immoralities which utterly unfit him

for the faithful discharge of the duties of an attorney to his client and of the court in which he may practice, and the court doth hereby find that the character of the said George W. Radford is such as shall no longer be approved by this court, or any other court, and is such that we or the public cannot safely rely upon his (said George W. Radford's) honor and integrity.

" Due consideration having been given to the aforesaid findings, it is ordered, and the court doth hereby order, that the license of said George W. Radford to practice as an attorney and counselor at law and solicitor in chancery in all the courts of this State be, and the same is hereby, revoked and canceled, and that the name of said George W. Radford be, and the same is hereby, stricken from the roll of attorneys of this court, and that the said George W. Radford be, and is hereby, removed from his office and offices as an attorney and counselor at law and solicitor in chancery, and that the said George W. Radford be and he is hereby, forever disbarred from practicing as an attorney and counselor at law and solicitor in chancery in any of the courts of this State."

The respondent then applied to this court for a writ of certiorari to review the proceedings and judgment, which writ was granted.

In his petition for such writ, respondent alleges errors as follows:

"(a) In overruling your petitioner's said demurrer, and separately erred in overruling each and every ground thereof.

"(b) In not requiring each witness to examine his or her testimony, and to correct and sign the same, and in considering such testimony as evidence in this cause, without the same being done.

"(c) In refusing or failing to rule on your petitioner's motion, made at the close of the proofs of the friends of the court, to dismiss said proceedings, and in not granting said motion, and in not dismissing said proceedings.

"(d) In its conclusions and findings of fact, and as to each of the same, as set forth in its opinion (Exhibit C), and in its order (Exhibit D), and that the same are contrary to the evidence in said cause.

"(e) In finding that the acts mentioned in said order (Exhibit D) were done by your petitioner 'wilfully, un-

lawfully, knowingly, perversely, contemptuously, falsely, fraudulently and intentionally,' as charged in the petition for disbarment in this cause; there being no testimony to support the same; and there being affirmative testimony showing that said acts were not so done.

"(*f*) In holding that the findings support the order of disbarment.

"(*g*) In entering an order of disbarment upon said findings.

"(*h*) In disbarring your petitioner.

"(*i*) In refusing to stay said order, pending a review by this honorable court."

It is well that we keep in mind the fact that this case is before us upon certiorari, under the provisions of section 10497, 3 Comp. Laws; and that it has been often held that the office of a certiorari is not to review questions of fact, but questions of law. And that in examining into the evidence the appellate court does so, not to determine whether the probabilities preponderate one way or the other, but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would, or would not, have been drawn by the appellate tribunal. *Jackson* v. *People,* 9 Mich. 111 (77 Am. Dec. 491).

1. It is claimed that the court erred in overruling the demurrer, and in overruling each and every ground thereof. After an examination of the demurrer, both general and special, we are of opinion that it was properly overruled. The charges and specifications were explicit and clear, and the practice followed has been approved by this court. *In re Shepard,* 109 Mich. 631 (67 N. W. 971).

*Randall* v. *Brigham,* 7 Wall. (U. S.) 523, was a case which reached the Supreme Court of the United States on error to the United States circuit court for the district of Massachusetts. The action was brought by plaintiff, who was an attorney and counselor at law in Massachusetts, against the defendant, who was one of the justices of the

superior court of that State, for an alleged wrongful removal by him of the plaintiff from the bar. Objection was raised to the sufficiency of the charges brought against the plaintiff. The statute of that State gave the superior court, it being a court of general jurisdiction, power to remove any attorney "for deceit, malpractice or other gross misconduct." It was there held that formal allegations, making specific charges of malpractice or unprofessional conduct, are not essential as a foundation for proceedings against attorneys.

"All that is requisite to their validity is that, when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made, and opportunity afforded him for explanation and defense. The manner in which the proceeding shall be conducted, so that it be without oppression or unfairness, is a matter of judicial regulation."

A reference to our statute (sections 1128 to 1130) will show that its provisions were complied with in this proceeding. If the petition was true, it set forth sufficient grounds for the disbarment of respondent.

2. It is urged that the court erred in not requiring each witness to examine his or her testimony, and to correct and sign the same, and in considering such testimony as evidence, without the same being done. We think that there is no merit in this point. The testimony was taken in open court before one of the circuit judges. It would have been perfectly regular and competent for this judge to have alone heard and disposed of the case. He saw fit to call in two other judges to hear and decide the case, all acting together. We know of no rule requiring testimony so taken to be examined and signed by the witness.

3. The remaining allegations of error go to the merits of the whole case, and may well be examined together. They were well expressed by respondent's counsel in the oral argument, when he said that two questions were presented: *First*. Was there a fair trial? *Second*. Was there evidence to support the findings?

After reading this record with great care, we are constrained to hold that both of these questions should be answered in the affirmative. By the uncontradicted evidence in the case, the manner in which the respondent handled the Oxnard estate, not only cannot be justified, but shows such a disregard of his legal obligations and duties as executor under the will of John E. Oxnard, deceased, to the legatees and to the court as calls for censure and condemnation. It is true that he was given by the will large powers of sale and investment, but the testator added, "in such manner as he may deem best to *preserve* my estate for the purposes herein named."

Mr. Oxnard died in November, 1899. The will was admitted to probate January 4, 1900, and the respondent qualified as executor. The total amount of the estate, including the life insurance, which came into the respondent's hands, was claimed to be over $30,000. Payments were made by respondent, as executor, to the widow and daughters, and to the surviving daughter from early in 1900 to July, 1908. During this time, no inventory of the estate and no executor's account had ever been filed in the probate court, although the legatees had on numerous occasions requested the respondent to close the estate.

On March 10, 1908, the probate court ordered the respondent to file an inventory and his final account within 30 days after service of a copy of the order. On the 26th of May, 1908, a further order was entered that the inventory and account be filed on or before June 26, 1908. These orders were disobeyed. On August 6, 1908, a petition was filed in said court by Florence O. Beach, the surviving daughter, reciting the issue and service of the orders of March 10th and May 26th, and averring the disobedience of respondent, and on July 22d an order for his arrest and imprisonment was made. The petition asked that respondent be removed as executor and trustee, and that a suitable person be appointed in his place. The warrant was issued July 22d. On August 25, 1908, the sheriff returned that he could not find respondent, and on

the same day an order was made by the probate court, removing respondent from his executorship, and on September 13th Emmet A. Perry was appointed in his place. September 2d respondent filed his inventory and account. Objections were duly filed by the widow and daughter to the account. Later respondent filed an amendment of the account. On November 17, 1908, respondent was ordered to give a bond in the sum of $20,000, as trustee, and proof of the service of the order was filed November 23d. He did not comply with the order. The hearing on the account was adjourned from time to time, but on May 15, 1909, the probate court made an order and adjudication that:

"The cash balance due from said executor at this date, including interest, is the sum of $21,611.34, of which the sum of $5,537.16 is due Elizabeth R. Oxnard, and said executor is hereby ordered to pay over said sum to her forthwith. The court finds that the cash balance due the fund provided in said will for the benefit of said Florence Oxnard Beach is the sum of $15,904.19, to be hereafter assigned to the trustee to be appointed by this court."

The Security Trust Company of Detroit was appointed such trustee, and on July 14, 1909, the probate court ordered that:

"The cash balance due the fund provided in the will of said John E. Oxnard for the benefit of Florence Oxnard Beach, being the sum of $15,904.19, with interest thereon from said May 15, 1909, be and the same is hereby assigned to said Security Trust Company, trustee. And it is further ordered that George W. Radford forthwith turn over the said cash balance of $15,904.19 and the interest thereon to said trustee."

From this record, it appears that respondent has not paid over any of said sums. He has not appealed from said orders, or either of them. He claimed in the court below that the amounts decreed against him were too large; but in his answer he admitted an indebtedness of over $5,000. He made investments in his own name, in both personal and real estate, showing no connection with

the trust. He kept the money belonging to the trust in his own bank account, and drew therefrom for his own uses, as well as for payments in the trust matters, without his checks or books showing any difference between the two. He kept no accounts, as executor, showing his investments. As to two pieces of real property in which he had invested the money of the estate, taking the title in his own name as absolute owner ( both of which were mortgaged by him, and both of which were lost upon foreclosure of mortgage), he did not upon the trial produce or prepare any statement of receipts of rents and disbursements, although often asked so to do. His testimony upon those subjects was evasive, inconclusive, and very unsatisfactory. One cannot impartially read this record without reaching the conclusion that the respondent acted in bad faith in dealing with this estate; that he was guilty of deceit in his fiduciary relation to the legatees; and that the judgment of the circuit court was fully justified. The evidence shows, not a mere mistake in judgment, but a studied purpose and design to exploit the assets of this estate in his own interest, and not to preserve the estate for the purposes named in the will. The respondent is presumed to know the law, and his duty to those with whom he stands in a trust relation. We can reach but one conclusion, and that is that he acted in bad faith.

It is significant that in each of the cases in which the respondent is charged with improper and unprofessional conduct in the petition, he managed to get the legal title to the property of his *cestuis que trustent*, or clients, into his own name, as the absolute owner thereof. This opinion might well end here. But we shall notice some of the points urged by counsel for respondent.

It is claimed that the court has no right to disbar an attorney until, by a judicial proceeding, determined in a judicial way, the court shall find that by some criminal conduct on his part, of which he has been convicted, or for some professional misconduct, he has forfeited his right to practice law. The early case, *In the Matter of Mills*,

1 Mich. 392, fully meets and answers this point. That case has been cited and followed many times.

The following authorities are in point here:

*Sanborn* v. *Kimball*, 64 Me. 140. This was a proceeding, in behalf of the bar of Penobscot county, for a removal of Kimball from the office of attorney and counselor at law. The court holds that an attorney at law is an officer of the court, and may be removed from office for misconduct, ascertained and determined by the court, after an opportunity to be heard has been afforded. The statute of Maine makes "a good moral character a condition precedent to admission to the bar." It was held that when an attorney at law had forfeited his claim to such character by such misconduct, professional or nonprofessional, in or out of court, as rendered him unworthy to society in general, and unfit and unsafe to be intrusted with the powers, duties, and responsibilities of the legal profession, the court may deprive him of the power and opportunity to do further injury, under the color of his profession, by removing him from the bar. The *Case of Mills, supra*, is cited with approval in that case.

In *Re Thatcher*, 80 Ohio St. 492 (89 N. E. 39), it was held that, in order to justify the court in disbarring an attorney, it was not necessary that his offense should constitute a contempt or a crime, or that he should be convicted of a crime or contempt before disbarment; that, while the power of disbarment should be exercised with great caution, yet, where the respondent had been found guilty of unprofessional conduct involving moral turpitude, and of misconduct affecting his character and standing as an attorney, and especially where he had manifested no signs of regret, and retracted nothing, the courts will not hesitate, through sympathy for the individual, to protect themselves from scandal and contempt, and the public from prejudice, by striking such person from the roll of attorneys.

*Ex parte Wall*, 107 U. S 265 (2 Sup. Ct. 569). In this case it was held that an attorney's name will be struck off

the roll, among other things, if he is guilty of gross misconduct in his profession, and of acts, although not done in his capacity as an attorney, gravely affecting his character as an attorney; but if the acts charged are indictable, and are fairly denied, the court will not proceed against him until he has been convicted by a jury. And the court said:

"The cases are quite numerous in which attorneys, for malpractice or misconduct in their official character, and for other acts which showed them to be unfit persons to practice as attorneys, have been struck from the roll upon a summary proceeding, without any previous conviction of a criminal charge"— citing many cases, including *In the Matter of Mills*, 1 Mich. 392, and *In the Matter of George W. Wool*, 36 Mich. 299.

This case reviews many of the cases already cited at great length.

*State* v. *McClaugherty*, 33 W. Va. 250 (10 S. E. 407), holds that when an attorney commits an act, whether in the discharge of his duties as an attorney or not, showing such want of professional or personal honesty as to render him unworthy of public confidence, it is not only the province, but the duty, of the court, upon proper presentation of the case, to strike his name from the roll of attorneys.

*In re Spencer*, 137 App. Div. (N. Y.) 330 (122 N. Y. Supp. 190). It is worthy of note that the statute in New York is similar to ours, in that it provides "an attorney and counselor who is guilty of any deceit, malpractice, crime or misdemeanor, may be suspended or removed from office." The case holds that the question for determination, both in appointing an attorney to, and removing him from, his office, is whether he is qualified to hold it. It is also held that his removal is not penal in character  See *Bar Association of City of Boston* v. *Greenhood*, 168 Mass. 169 (46 N. E. 568). In this case the authorities are generally reviewed, and it is held that the primary purpose of the proceeding is not punishment, but the preservation of the virtue of the courts and protection to the public from attorneys who disregard their oaths of office; and

attorneys may be removed for causes not included in the statute, such as ceasing to be of good moral character, within the meaning of these words as used in the statute prescribing requirements for admission to the bar. ·

In *Re Wilson*, 79 Kan. 674 (100 Pac. 635, 21 L. R. A. [N. S.] 517), it was held that whenever one who was in fact a lawyer accepted employment to act for some one else in a business transaction, in the course of which he received money belonging to his employer, his wrongful detention of it is a sufficient ground for his disbarment, although he may not have been called upon to give legal advice or to take part in litigation; that "such conduct would justify excluding him from the practice of the law, as it would certainly be a just cause of refusing an application for admission to the bar"—citing *In re Smith*, 73 Kan. 743 (85 Pac. 584). In this case the amount of money received and misappropriated was inconsiderable.

*People* v. *Salomon*, 184 Ill. 490 (56 N. E. 815). This was a proceeding to disbar respondent, Moses Salomon, for misconduct in his office as an attorney. In this case an attorney, acting for an administrator, who had collected money due the estate after the administrator had fled, and invested it in his own business, defying the orders of the probate court to turn the money over to an administrator appointed by it, was held guilty of such misconduct in office as authorized his disbarment. The court said:

"Such conduct on the part of an attorney at law must be regarded, within the statute, 'as malconduct in office,' and must be condemned as unworthy of the honorable profession to which he belongs. Sharswood, in his Essay on Professional Ethics, says:

" 'There is no class of men among whom moral delinquency is more marked and disgraceful than among lawyers. Among merchants, so many honest men become involved through misfortune that the rogue may hope to take shelter in the crowd and be screened from observation. Not so the lawyer. If he continues to seek business, he must find his employment in lower and still lower grades, and will soon come to verify and illustrate the remark of Lord Boling-

broke that, "the profession of the law, in its nature the noblest and most beneficial to mankind, is in its abuse and abasement the most sordid and pernicious.".'"

*People* v. *Chamberlain,* 242 Ill. 260 (89 N. E. 994). This case holds that the power of the supreme court of Illinois to disbar an attorney is an inherent one, which exists independently of any statute on the subject; and, if satisfied that the attorney has acted fraudulently and in bad faith, the court may disbar him, regardless of whether or not the case comes technically within the provisions of the statute.

It is also held that the fact that a client had settled with his attorney for money collected did not preclude subsequent inquiry into the moral and professional character of the attorney's acts; and if it was shown that he had acted in bad faith toward such client, and had obtained, by misrepresentation and concealment of facts, money to which the client was rightfully entitled, the court might disbar the attorney, notwithstanding such settlement.

In *Randall* v. *Brigham, supra,* the court said:

" The authority of the court over its attorneys and counselors is of the highest importance. They constitute a profession essential to society. Their aid is required, not merely to represent suitors before the courts, but in the more difficult transactions of private life. The highest interests are placed in their hands, and confided to their management. The confidence which they receive, and the responsibilities which they are obliged to assume, demand, not only ability of the highest order, but the strictest integrity. The authority which the courts hold over them, and the qualifications required for their admission, are intended to secure those qualities."

Many more cases might be cited, going much further than we find it necessary to go, to sustain the judgment of the court below.

We find no error in the proceedings, and the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, BROOKE, and BLAIR, JJ., concurred.