No. 26,582.

## In re the Disbarment of OSCAR E. LEARNARD.

### SYLLABUS BY THE COURT.

ATTORNEY AND CLIENT — *Suspension and Disbarment* — *Misappropriation and Failure to Account.* In a proceeding to disbar an attorney at law, the court holds, on disputed questions of fact, that the evidence establishes that the accused retained all of a sum collected by him by litigation, although repeated requests had been made by the client for payment and settlement, and the evidence further established that by the contract between the accused and his client each was entitled to one-half of the amount collected; and the court further holds that the conduct of the accused merits his suspension from the practice of law for a period of two years.

Original proceeding in disbarment. Opinion filed October 9, 1926. Suspended.

*J. V. Humphrey,* of Junction City, for the accuser.
*M. A. Gorrill,* of Lawrence, for the accused.

The opinion of the court was delivered by

MARSHALL, J.: On July 2, 1925, the board of law examiners caused to be filed an accusation against Oscar E. Learnard, a practicing attorney at law in this state, charging him with having received from Harold O. Hunter a check to be collected by suit or otherwise for one-half of the interest of Hunter in the check; that an action was commenced before a justice of the peace, where judgment was rendered in favor of Hunter; that the action was then appealed to the district court, where the action was again tried and judgment was rendered for the plaintiff; that the case was then appealed to the supreme court where the judgment was affirmed; that the entire judgment was then paid by the defendant in the action; that the judgment was for $267.96; that the judgment was paid in

---

Attorney and Client, 6 C. J. pp. 591 n. 69, 592 n. 70, 607 n. 90, 612 n. 52; 19 L. R. A. n. s. 414; 2 R. C. L. 1095.

*In re* Learnard.

full; and that the accused received the amount paid and refused to account to Hunter for any part of it. Harry K. Allen, of Topeka, was appointed commissioner to hear the evidence and make findings of fact and conclusions of law and report them to the court. That he has done. The findings of fact and the conclusions made by the commissioner are as follows:

"FINDINGS OF FACT.

"First. The accused, Oscar E. Learnard, is an attorney at law, fifty-one years of age, and has been engaged in the practice of law at Lawrence since 1896, except from 1906 to 1911, when he was out of the state.

"Second. The reputation of the accused in and about the city of Lawrence, Kan., for truth and veracity and for ethical conduct and practices and fair dealing with his clients has been good.

"Third. That about May, 1919, accused was employed by Harold O. Hunter to collect the check of $242.60 from G. A. Bucheim for a contingent fee of one-half of Hunter's interest in the check; that it was later stipulated between the parties that if Hunter should be found to be the owner of the face of the check that the accused, Learnard, was to have one-half of the amount recovered.

"Fourth. That the accused, Oscar E. Learnard, as attorney of record and in his representative capacity, on April 27, 1921, collected the amount of the judgment and interest, $267.96, and has converted the same to his own use; that the accused made no reasonable effort to locate his client; that he ignored the repeated demands of Harold O. Hunter in ten or twelve letters from Des Moines demanding a settlement; that he failed and refused to render an accounting upon the demand of Richard C. Hunter, attorney for Harold O. Hunter; and also, when opportunity was offered by the board of law examiners, he still failed and refused to account to or pay over the money due his client.

"CONCLUSIONS.

"The statute of Kansas, section 7-111, provides that an attorney at law may be disbarred or suspended for neglecting or refusing on demand to pay over money in his hands due or belonging to a client except where such money is retained under a *bona fide* claim of lien for services. The accused, Learnard, admits that he has converted the entire amount of the judgment and interest collected by him as agent for his client to his own use and boldly maintains his right thereto.

"Your commissioner is of the opinion that the claim of the accused that he is holding the funds of his client under a *bona fide* claim of a lien for services cannot be sustained for the following reasons:

"First. By his own statement, Hunter had only an interest of $40 or $50 in the check at the time the contract was made with Hunter, and any interest that Learnard had was measured by the contract made at that time. It would be limited to the terms of that contract.

"Second. Learnard, having collected the judgment and receipted for it in his representative capacity, would be estopped to deny the title of his client

to the money. On every consideration of equity and fair dealing he would be precluded from claiming the ownership of any increment, accretion, or after-acquired interest that might accrue to his client.

"Third. The $100 draft which he purchased and carried with him is a confession that he owed Hunter and impeaches the *bona fides* of his subsequent conduct in converting the money to his own use.

"Fourth. Learnard's good faith depends largely on his claim that he was entirely unable to find Hunter. Taking into consideration the fact that he had the address of Hunter within thirty days of the time he collected the judgment; that his client wrote him ten or twelve letters in the next twelve months; that he answered the letter of Richard C. Hunter on November 23, 1923; that he knew that Hunter was an agent of the Liberty Life Insurance Company, and his admission that he made no effort, the only fair and reasonable conclusion is that he had formed a settled purpose to postpone and ignore his client and withhold from him the entire amount of the recovery.

"The conduct of this attorney is contrary to the letter and spirit of the statute, the standard of ethics laid down by the supreme court of Kansas in a long line of decisions, is contrary to fair dealing between attorney and client, is contrary to the canons of the American Bar Association and the Bar Association of the state of Kansas, is contrary to the oath of office taken by the accused, is unprofessional, is a betrayal of his trust, and justifies an order of disbarment. When a lawyer conducts himself so that confidence can no longer be placed in him with safety his usefulness to the court and state has ceased. Other offenses may perhaps be condoned, but conversion to his own use of the property of his client is an offense that cannot in any degree be countenanced.

"In *Ex Parte Burr*, 9 Wheaton 529, Chief Justice Marshall said: 'The profession of an attorney is of great importance to an individual and the prosperity of his whole life may depend upon its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved.'

"In view of the long and honorable career of the accused at the bar and that this is the first charge of unprofessional conduct ever made against him, and mindful of the admonition of Marshall that the power to revoke the license of an attorney should be exercised with great moderation and judgment, your commissioner recommends that the accused be suspended from the practice for a period of two years: *Provided*, That at the end of one year he shall be permitted to apply for reinstatement upon a showing made that he has paid his client the money due him under these findings, together with the costs of this proceeding."

The accused requested other findings of fact and conclusions of law, which were refused by the commissioner.

Some of the evidence concerning the contract between Hunter and the accused was conflicting. That evidence is disclosed by the findings and conclusions made by the commissioner and need not be

*In re* Learnard.

here repeated. There was enough to support the finding of the commissioner, and the weight of the evidence likewise supports the findings, which are approved and adopted by the court.

Section 7-111 of the Revised Statutes, in part, reads:

"An attorney at law may be disbarred or suspended by the supreme court, and not by any other court, for any of the following causes arising after his admission to practice in this state . . . for neglecting or refusing, on demand, to pay over money in his hands, due or belonging to a client, except where such money is retained under a *bona fide* claim of a lien for services. . . ."

In 6 C. J. 591 it is said:

"Whether so provided by statute or not, it is always a ground for the disbarment of an attorney that he has misappropriated the funds of his client, either by failing to pay over money collected by him for his client or by appropriating to his own use funds intrusted to his care, provided the circumstances attending the transaction are such as to satisfy the court that the attorney is acting in bad faith or with a fraudulent purpose."

Cases to support the principle declared in the text are there cited from twenty-nine different jurisdictions, among which is the state of Kansas.

A note to *Commonwealth v. Roe*, found in 19 L. R. A., n. s., 414, reads:

"Since honesty, probity and good moral character are necessary qualifications of an attorney for the practice of his profession, it has been almost universally held that an attorney who, upon demand, retains money collected for his client, or fraudulently appropriates to his own use money which has come into his hands in a professional way, is not of such honesty and good character as to make him worthy of the confidence of the public and his clients; and therefore the courts have not hesitated in disbarring or striking from the rolls one guilty of such acts."

*In re Wilson*, 79 Kan. 674, 100 Pac. 635, and *In re Washington*, 82 Kan. 829, 109 Pac. 700, support this rule. In the code of ethics adopted by the American Bar Association and the Bar Association of the state of Kansas, it is said that—

"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade." (Code of Ethics, 108 Kan. v.)

What was said by the court in *In re Macy*, 109 Kan. 1, 8, 196 Pac. 1095, is pertinent here:

"It is an attorney's duty to protect the rights of his client, but it is likewise an attorney's duty to refrain from doing an intentional wrong to the ad-

verse party. In the United States of America the attorney at law occupies a peculiar and very important position. Because of his integrity, his ability, and his learning, he is often called on to administer the executive departments of government, and he fills a large place in all our legislative bodies. He has taken a most important part in framing our form of government and in guiding its growth and development. Possibly democratic government cannot long exist without a strong, able, honest, conscientious and patriotic bar. If a lawyer is not honest, if he is not conscientious, or if he is not patriotic, he is not fit to represent others in the courtroom. Justice is administered almost wholly by and through lawyers. The administration of justice is one of the highest, if not the highest, of governmental functions. An attorney at law in the preparation and trial of an action in court represents his client, but he does more than that—he is there, not only as an advocate, but also as a person trusted and authorized by the state to assist the court in determining what is right between the parties before it. He cannot excuse himself by saying that his duty to his client demands that he adopt a line of conduct detrimental to the interests of the public. The state is vitally interested in seeing that justice is done and goes to great expense and provides elaborate machinery for that part of its governmental work. If attorneys at law are permitted to resort to unscrupulous practice for the protection of the supposed rights of their clients, one of the purposes of the state will be defeated, its foundations will crumble, and life, liberty, property, and happiness will be at the mercy of lawyers who care for nothing except the advantage of their clients. The integrity of the courts and of all who assist in their work must be preserved, or the practice of law, as it is now known, will cease."

In all of the courts, both state and federal, of the United States of America, an attorney at law assists in the administration of justice. He is there to promote justice. He is a part of the machinery provided by government in the performance of its function in administering justice. If he perverts justice, the state fails in its duty to administer justice. His conduct should be as careful and clean as that of the judge who tries the case. In other words, the state demands of an attorney at law that he be absolutely obedient to law and that his conduct be always correct. He cannot escape disbarment by following that line of conduct which barely keeps the citizen out of jail. In the present case, if the accused had been charged with the embezzlement of the money in his hands and a jury had believed the evidence, which the commissioner believed, a verdict of guilty would not have been set aside.

Oscar E. Learnard is suspended from the practice of law in the courts of the state of Kansas for a period of two years.