In re ALBERT H. NUNN.

July 13, 1898.

Nos. 10,681—(10).

**Disbarment of Attorney—Alteration of Records.**
> In proceedings to disbar the respondent for misconduct in his profes-
> sion as an attorney and counselor at law, by changing and altering public
> records in the office of the clerk of the district court, *held*, that the evi-
> dence proves that the respondent is guilty of the misconduct charged.
> Ordered that he be removed from the office of attorney and counselor at
> law of the courts of this state, and that he be disbarred from practicing
> therein.

Information in the supreme court by the discipline committee of
the Hennepin County Bar Association, charging Alexander H.
Nunn, an attorney at law, with professional misconduct. Judg-
ment of disbarment entered.

*A. B. Jackson* and *Henry C. Belden*, for the discipline committee
of the Hennepin County Bar Association.

*Rome G. Brown* and *Victor J. Welch*, for respondent.

MITCHELL, J.

The charge against respondent is that he has been guilty of mis-
conduct in his profession as an attorney and counselor at law of
the courts of this state, in this: That on June 12, 1897, and on
other days prior and subsequent thereto, he knowingly and cor-
ruptly marked upon, changed, altered and obliterated certain rec-
ords in the office of the clerk of the district court in and for Hen-
nepin county, to wit, the records of the description of certain par-
cels of real estate contained in the delinquent tax list prepared
by the auditor of said county, and filed in the office of the clerk of
the district court in the matter of the proceeding for the enforce-
ment of delinquent taxes for the year 1895, with the purpose and
intent of making invalid said proceedings for the enforcement of
said delinquent taxes against sundry descriptions of real estate
entered in said delinquent list, which said wrongful acts were done
by the respondent while examining said records as an attorney at
law and a member of the bar of said Hennepin county.

The evidence having been taken by a referee and reported to this court, the only question for us to determine is one of fact, viz., whether the evidence proves that the respondent is guilty of the professional misconduct charged.

The oral testimony is very voluminous, and the exhibits are very numerous, the probative force of many of which can only be fully appreciated by actual inspection. It is therefore impracticable to make anything like a full statement or analysis of all the evidence, and we shall not attempt it, but content ourselves with giving a general outline of it.

In accordance with the general practice, the delinquent tax list was on printed blanks, the descriptive headings of which were: (1) "Subdivision or Section"; (2) "Sec. or Lot"; (3) "Twp. or Blk." In making up this list, the practice was to erase the one of the alternative descriptions which was not applicable to the property on that particular page. Thus, if the property was platted, the words "Sec. or" and "Twp. or" would be erased, while if it was rural land the words "or Lot" and "or Blk." would be erased, by drawing ink lines across them. The alterations or erasures which the respondent is charged with having made consisted of drawing ink lines across the remaining words "Sec."—"Twp.," or "Lot"—"Blk.," as the case might be , thus making the descriptions of all the property on the page appear to be defective. The delinquent list for 1895 consisted of three volumes, but the evidence directly tending to implicate the respondent is confined to alterations or erasures in volume 1.

It is an undisputed fact that such erasures had been made. The evidence, as well as the presumption, is that they were not made by the officials who prepared, or had custody of, the records; and, this being so, the necessary inference is that they must have been made by some third person or persons for an unlawful purpose.

The evidence directly tending to prove that respondent made the erasures consists of the testimony of the vault clerk and of a deputy in the clerk's office. Stated in a general way, their testimony is that, while respondent was examining volume 1 during the forenoon of June 12, they saw him making marks on the top of one or more of the pages, with a fountain pen, and then apply to it a

blotter, which he had taken from a pile of clean blotters lying on a small table near where he sat, and that before he left he replaced the volume in its proper rack, and put the blotter back on the top of the pile whence he had taken it. The evidence is to the effect that these witnesses immediately informed other officials in the office of what they had seen, who thereupon, as soon as respondent left, proceeded to examine volume 1, and found alterations or erasures of the kind described, on the tops of 38 pages; that these erasures were of a light blue color (indicating that they were fresh or recent), easily distinguishable from the erasures made by the officials in preparing the delinquent list, which, by reason of their age, had turned black; that they also examined the blotter which respondent had used, and found upon it ink lines of a light blue color, corresponding to the light blue ink lines in the book. Several reliable and disinterested witnesses, who were called in for that purpose by the clerk of the court an hour or two afterwards, ex-- amined the book and the blotter, and corroborated the officials as to the existence of the alterations on the books, and of the ink lines on the blotter, and as to the fresh or recent appearance of both.

The book and the blotter are both in evidence, and their appear- ance corroborates the testimony of these witnesses as to the char- acter of the erasures and of the ink lines on the blotter, and as to the similarity of the two. The blotter shows that it had never been used on ordinary writing, but, with the exception of three or four figures, only on fresh ink lines similar to those found in the delin- quent list. This similarity is more strongly brought out by en- larged photographic views, which we have no doubt are competent evidence.

It further appears from the evidence that respondent was making a specialty of "tax" and "tax-title" litigation, in which he was as- sailing the validity of taxes and tax titles; that the firm of which he was a member had some 40 such cases on the April term, 1897, of the district court for Hennepin county, two of which involved the validity of the tax of 1895 on lands the description of which was affected by the alterations referred to. It also appeared that re- spondent had solicited landowners for business of this character.

A large number of similar alterations or erasures (of an older

date, as indicated by their black color) were found in volumes 2 and 3, which affected the description of 339 tracts of land involved in cases in which respondent was attorney. As there is no evidence directly tending to connect him with these erasures, he could not be found guilty of making them, yet, in view of all the facts above referred to, and in view of the further fact that he had access to and had examined these volumes also in connection with his tax litigation, we think it is a circumstance which may be taken into account for what it is worth, although great caution should be exercised in drawing inferences from it.

The respondent admitted that he was in the vault examining volume 1, at the time referred to; that he had and used a fountain pen on that occasion. He testified that he had been employed by Assistant County Attorney Smith to assist in the trial of the real-estate tax cases at the then current term of court; that he was examining the book and making memoranda in connection with those cases; that what he wrote was not on the book, but on a memorandum which he had lying before him on the book; that he took no blotter from the pile referred to, but found a blotter in the book; and that he used it merely as a mark to note pages in the book to which he might desire to refer a second time. No such memorandum was produced in evidence. Respondent's testimony is that he gave this memorandum to Smith on that same day, and almost immediately after he left the clerk's office; that he repeatedly asked Smith for it; and that Smith promised to return it, or keep it for him. Smith, on the other hand, denied ever having employed respondent, except in certain cases called the "Rossman cases"; that respondent never gave him any memorandum; and that he never heard of any such claim until it was made by respondent's counsel on respondent's trial for forgery.

The absence of any reason why respondent should have given Smith this memorandum (if one existed), especially in its admittedly unfinished condition, and his dallying along for months without getting it back, relying upon Smith's alleged promises, knowing all the time of its vital importance to him in making out his defense, tend very much to cast doubt upon the credibility of respondent's story regarding the memorandum.

To break the force of the evidence against the respondent, his counsel urges that the witnesses who testified to seeing him write in the book admit that they could not say that they saw his pen touch the paper; also that the evidence shows that it takes days, and even weeks, for ink marks on paper to change from light blue to black, and hence that it was impossible for those who examined the alterations to tell whether they had been made one hour or one week previously; also that the evidence of some of the witnesses to the effect that one or more of the ink marks blurred when touched with the finger showed, when taken in connection with other evidence in the case, that the alterations must have been made after the respondent left the clerk's office.

All of this evidence is entitled to consideration, but under the circumstances we do not think that any or all of it has any great tendency to break the force of the evidence against the respondent. In reference to the last circumstance referred to, the supposed blurring of the ink marks might have been caused by moisture on the finger.  Moreover it is impossible that these alterations could have been made after respondent left the office, and before the witnesses, called in by the clerk, examined them, unless they were deliberately and fraudulently made by the officials, for the express purpose of incriminating the respondent.

It is also suggested that, of all the 38 erasures in volume 1, only 2 affected the description of lands involved in the suits in which respondent was interested as counsel, and that in these cases the answers previously interposed were such that the insufficiency of the description of the lands could not have been taken advantage of. If respondent was making alterations to affect the result of his suits, there were the most manifest reasons why he would naturally not limit the erasures to lands involved in those actions.   If he had, they would have been too strongly suggestive of their author.   The insufficiency of the answers to make defectiveness of description available is of course important on the question of motive, but it is not at all conclusive.   Pleadings may be, and frequently are, amended.

The subsequent conduct of the respondent, in abandoning the defense of defectiveness of description in some of his tax cases when

called for trial, when the county attorney stated that he would claim that the erasures in the descriptions were forgeries, is also a matter entitled to some weight. This would not ordinarily be the conduct of an innocent man, conscious of having done no wrong, when confronted with a charge of forgery.

There are numerous other circumstances in evidence which time will not permit us to discuss, some of which point to respondent's guilt, while others tend somewhat to break the force of the evidence against him. But the examination and consideration of the entire evidence has impressed on our minds a profound conviction that, unless the respondent is the victim either of rank perjury and a diabolical plot, or of a most unusual and extraordinary coincidence of accidental circumstances, he is guilty of the misconduct charged against him. We do not find in the record a particle of evidence of any perjury or plot against him, or anything sufficiently indicative of the other alternative suggested, to impair the force of the evidence against respondent, or to create a doubt as to the conclusion to be drawn from it. We therefore find that the respondent is guilty of the misconduct with which he is charged.

It is therefore ordered that he be, and hereby is, removed from the office of an attorney and counselor of the courts of this state, and he is hereby disbarred from hereafter practicing therein.