## STATE OF KANSAS

### JANUARY TERM, 1921.

#### PRESENT:

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. SILAS W. PORTER,
HON. JUDSON S. WEST,  } JUSTICES.
HON. JOHN MARSHALL,
HON. JOHN S. DAWSON,

---

No. 21,846.

### *In re* Disbarment of FRED S. MACY.

#### SYLLABUS BY THE COURT.

PROCEEDINGS IN DISBARMENT OF ATTORNEY—*Accusations Sustained.* An attorney at law should be disbarred for making, in a pleading filed by him, false charges of criminal misconduct against an attorney at law who is a party to the action, where the attorney filing the pleading knew or should have known that the charges were false; for appearing in court to participate in an action, in which he is interested as an attorney, drunk and intoxicated; for changing an affidavit for service by publication without leave of court after judgment in an action prosecuted by him; for bringing a fictitious action and in that action taking the depositions of witnesses for the state, in a criminal prosecution against another party whom he is defending, for the purpose of obtaining their evidence in the criminal case, and thereafter keeping the depositions in his own possession and never filing them; for bringing actions to quiet title to real property or to foreclose mortgages thereon against persons known by him to be residents of the state and of the county in which the action is brought and stating in the affidavit for publication notice, whether made by himself or his client, that such persons are nonresidents of the state of Kansas; for bringing an action to quiet title to real property or to foreclose a mortgage thereon when he knows that some of the defendants have rights superior to those of his clients, and dismissing the action as to

*In re* Macy.

those defendants on their appearance in court to protect their rights, and bringing another action under like circumstances, and again dismissing it on the appearance of those defendants; or, for bringing actions not in good faith to enforce the right of his client, but to extort money from the defendants, or to fraudulently deprive them of their property.

Original proceeding in disbarment. Opinion filed April 9, 1921. Accusation sustained.

*Richard J. Hopkins,* attorney-general, and *James A. Troutman,* of Topeka, for the complainant; *Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, of counsel.

*F. Dumont Smith,* of Hutchinson, *J. P. McLaughlin,* of Osage City, and *L. G. Turner,* of Pratt, for the accused. *F. S. Macy,* of Liberal, *pro se.*

The opinion of the court was delivered by

MARSHALL, J.: On March 11, 1918, the board of law examiners filed an accusation against Fred S. Macy, an attorney at law residing in Seward county, and asked that he be disbarred from practicing law in this state. The accusation contained fifteen counts, and a supplemental accusation containing twelve additional counts was thereafter filed.

F. P. Hettinger of Hutchinson was appointed commissioner to take the evidence. After taking the evidence he made a report which was filed November 13, 1920. Briefly stated, that report shows —

That the accused, in May, 1916, in an action pending in Oklahoma wherein V. H. Grinstead, a reputable attorney of Liberal, Kansas, was plaintiff and J. R. DeLautre was defendant, filed an answer in which Grinstead was charged with having, while county attorney of Seward county, agreed with DeLautre that he might run a place for the sale of intoxicating liquors in Liberal in violation of law, which charge the accused knew or should have known was false and unwarranted.

That the accused appeared in court to try an action in which he was interested, in such an intoxicated condition that he was unable to proceed.

That in an affidavit for service by publication in an action commenced by the accused for other parties, he made statements that were not true, and on his attention being called

thereto, after judgment had been rendered, withdrew from the affidavit the sheet containing the false statements and substituted another sheet therefor without leave of court.

That the accused was defending a party in Meade county, charged with arson; that the accused employed another person under the name of Jackson to go to Meade county and make a pretended investigation of the fire; that while there he made statements derogatory to the defendant in the arson case; that the person employed did as directed and returned and reported to the accused what had been done; that thereafter the accused commenced a fictitious action for that defendant against the person employed, asking $20,000 damages for slander based on the statements made by the person employed to others in Meade county; that in that action the accused took the depositions of the witnesses for the state in the arson case for the purpose of ascertaining what they knew, to be used by the accused on the trial of the person charged with arson; that the depositions were kept by him and were never filed with the clerk of the district court; that on the determination of the arson case, the action for slander was dismissed; and that the name Jackson, assumed by the employee of the accused, was fictitious and was known by him as such.

That the accused representing another party brought an action in Seward county against R. B. Hume and others to foreclose an old mortgage on real property, and on the appearance of R. B. Hume, dismissed the action as to him; that afterward the accused commenced another suit against R. B. Hume involving the same mortgage; that it was then discovered that the mortgage on which both suits were based had been barred in a former foreclosure action and was no longer of any validity, all of which was well known to the accused when he commenced the actions; that Hume again appeared and the action was again dismissed, but before dismissing the latter action, the accused tried to compel Hume to settle and pay him some money and threatened to bring other suits against Hume on the barred mortgage; and that to counsel for Hume, the accused stated that he knew the mortgage was not good, but he would continue to commence actions until Hume would buy the mortgage, or the accused would wear Hume out.

That the accused, for another party, commenced an action in Seward county involving the title to several pieces of real

property, the title to a part of which was in one Chapple, a resident of Doniphan county, as shown by the recorded deed and by the records in the office of the county treasurer of Seward county; that service by publication was made, although the accused could have easily discovered that Chapple was a resident of this state; that Chapple learned of the action and employed an attorney who went to Liberal; that the accused there demanded $300 of Chapple's attorney to compromise the case and finally compromised it by receiving $25; that the same land was involved in another suit in Stevens county; that in the latter case, the plaintiff had no interest in the land; and that both cases were fictitious and fraudulent and were commenced for the purpose of defrauding Chapple of his interest in the property.

That the accused commenced a number of fictitious actions for different parties to quiet title to real property or to foreclose mortgages thereon; that in some of them the accused knew that his clients had no substantial interest in the property, and that some of those against whom the actions were commenced were the actual owners thereof; that in those cases service was had by publication, and that in one action of this nature commenced in Seward county, one of the defendants lived in that county and was known to the accused, and another one lived in Pratt county and was well known throughout the southwest part of the state.

The evidence to sustain these findings of the commissioner is voluminous, and much evidence contradictory thereto was introduced by the accused, but it will not serve any purpose whatever to detail that evidence here. It is enough to say that these findings of the commissioner were supported by ample evidence, and they are approved and adopted by the court.

The accused attempts to excuse himself by saying that in all instances he relied on the statements of his clients for the truth of the matters concerning which complaint is made and acted thereon. He argues that this is a complete defense in this proceeding. The difficulty with this excuse and with this argument is that the accused knew that some of the statements made by his clients were false, and he cannot justify the things that he did by basing his actions on the supposed truth of those statements. A further difficulty is that in some in-

*In re* Macy.

stances, the accused acted on his own initiative and responsibility.

The oath administered to the accused when he was admitted to the bar was as follows:

"You do solemnly swear that you will support and bear true allegiance to the constitution of the United States and the constitution of the state of Kansas; that you will neither delay nor deny any man his right through malice, for lucre, or from any unworthy desire; that you will not knowingly foster or promote, or give your assent to, any fraudulent, groundless or unjust suit; that you will neither do, nor consent to the doing of, any falsehood in court; and that you will discharge your duties as an attorney and counselor of the supreme court and all inferior courts of the state of Kansas with fidelity .both to the court and to your cause, and to the best of your knowledge and ability. So help you God."

An attorney at law who, to accomplish his own purpose or that of his client, files a pleading in an action, charging another attorney who is a party thereto with misconduct which if true would subject the latter to criminal prosecution and to ouster from an office held by him, is guilty of such misconduct as shows him to be unfit to practice law if the attorney filing the pleading knew or should have known that the charge made was false.

In the third section of the syllabus, in *In re Adriaans,* 17 App. D. C., 39, this language is found:

"In a proceeding for the disbarment of an attorney for alleged false and scandalous statements made by him concerning a fellow-member of the bar and contained in a paper filed in a cause, it is no defense that such statements did not constitute a technical or indictable crime, nor does the question of privilege arise. The only question to be determined in such a proceeding is as to the fitness of the respondent to remain a member of the bar."

An attorney should not file any pleading which he knows to be false.

It is an abuse of the privileges of an attorney to commence an action, which he knows is unfounded, for the purpose of taking depositions to secure the evidence of witnesses in another action in which he is interested, and does not file nor use the depositions in the action in which they were taken. The right to compel witnesses to attend and give their testimony should not be exercised in fictitious cases for the purpose of obtaining the evidence of those witnesses to be used by the attorney taking their depositions against them on the trial of another action.

When papers have been filed in an action pending in the district court, they must remain as they were when filed except that amendments may be made in proper cases by leave of court, or sometimes by consent of the parties. A lawyer who, to accomplish any purpose of his own, after judgment has been rendered, changes an affidavit filed by him for service by publication, practices a fraud on the court and shows himself unworthy to be an attorney at law. In *In re Washington,* 82 Kan. 829, 836, 109 Pac. 700, this language was used:

"The alteration of the return of an officer after it is duly filed in the clerk's office, without any order or sanction of the court, is so dangerous to the rights of the parties and so perilous to public records that comment upon it seems hardly necessary."

(See, also, *The People v. Moutray,* 166 Ill. 630, and *In re Nunn,* 73 Minn. 292.)

An attorney who knowingly commences fictitious or unfounded litigation for the purpose of annoying the defendants, for the purpose of surreptitiously obtaining judgment against them, or for the purpose of fraudulently depriving them of their property, if the attorney who commences the actions knows that they are unfounded and knows the purpose for which they are brought, is guilty of misconduct of a most reprehensible sort. Such practice should not be resorted to under any circumstances whatever; it is not only wrong, but it is a fraud on the opposite parties and on the court.

In *Wernimont v. State, ex rel. L. R. Bar Assn.,* 101 Ark. 210, an attorney at law was disbarred for arranging with another party to purchase notes of insurance companies given by parties living in different parts of the state of Arkansas and then commencing actions in the county of the residence of his confederate, making him a party, and procuring service of process on the makers of the notes in the other counties.

In *Ex parte Ditchburn,* 32 Ore. 538, the court said:

"Unprofessional conduct on the part of an attorney involves a breach of the duty which professional ethics enjoin. It has been held that it may consist in betraying the confidence, taking advantage of or acting in bad faith towards his client; in attempting, by any means, to practice a fraud, impose upon or deceive the court, the adverse party, or his counsel;   .   .   .   and, in fact, any conduct which tends to bring reproach upon the legal profession, or to alienate the favorable opinion which the public should entertain concerning it." (p. 543.)

In *The People v. Hooper*, 218 Ill. 313, the supreme court of that state said:

"Dismissing a justice of the peace suit for the purpose of inducing the defendants to believe it had been dropped, and afterward taking an appeal, obtaining judgment by default and causing executions to be levied upon real estate, all without notice to defendants and for the fraudulent purpose of getting title to the real estate, is ground for disbarring an attorney." (Syl. ¶ 1.)

In *In re Wilson*, 79 Kan. 450, 455, 100 Pac. 75, this court said:

"It is, however, one of the requisites for admission to the practice that the candidate should present evidence to the court that he is a person of good moral character, and it would be a great stigma upon an honorable profession if the members of it were powerless to purge it of any who may have been improvidently received into its fold and whose after-life is offensively corrupt or whose business transactions, even outside of the courts, are characterized by dishonesty; in short, that the profession is compelled to harbor all persons of whatever character who have gained admission to it and are fortunate enough to keep out of jail or the penitentiary. This court, at least, is not prepared to say that persons of such character have a legal right to officiate as advocates of right in our courts, which ought to be and generally are temples of justice."

The supreme court of Connecticut, in *Fairfield County Bar v. Taylor*, 60 Conn. 11, said:

"It is not enough for an attorney that he be honest. He must be that, and more. He must be believed to be honest. It is absolutely essential to the usefulness of an attorney that he be entitled to the confidence of the community wherein he practices. If he so conducts in his profession that he does not deserve that confidence, he is no longer an aid to the court nor a safe guide to his clients." (p. 17.)

The supreme court of Illinois, in *The People, ex rel., v. Beattie*, 137 Ill. 553, 574, said:

"The lawyer's duty is of a double character. He owes to his client the duty of fidelity, but he also owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. He is an officer of the court—a minister in the temple of justice. His high vocation is to correctly inform the court upon the law and the facts of the case, and to aid it in doing justice and arriving at correct conclusions. He violates his oath of office when he resorts to deception, or permits his clients to do so. He is under no obligations to seek to obtain, for those whom he represents, that which is forbidden by the law."

The time was when a lawyer could appear in court in an intoxicated condition and not subject himself to public censure, but that time has passed. Any one at this time in this state that uses intoxicating liquor to the extent of producing intoxication is censured; generally no man can hold any responsible position in any worthy enterprise and use intoxicating liquors to excess. If any officer in this state, not subject to impeachment, shall be in any public place in a state of intoxication produced by strong drink voluntarily taken, he may be removed from office. (Gen. Stat. 1915, § 7603.) In such a condition of society, a lawyer who appears in court to conduct litigation in which he is interested and is in such a state of intoxication that the court is unable to proceed with that litigation, should not ask the state to continue his authority to practice law.

It is an attorney's duty to protect the rights of his client, but it is likewise an attorney's duty to refrain from doing an intentional wrong to the adverse party. In the United States of America, the attorney at law occupies a peculiar and very important position. Because of his integrity, his ability, and his learning, he is often called on to administer the executive departments of government, and he fills a large place in all our legislative bodies. He has taken a most important part in framing our form of government and in guiding its growth and development. Possibly democratic government cannot long exist without a strong, able, honest, conscientious and patriotic bar. If a lawyer is not honest, if he is not conscientious, or if he is not patriotic, he is not fit to represent others in the court room. Justice is administered almost wholly by and through lawyers. The administration of justice is one of the highest, if not the highest, of governmental functions. An attorney at law in the preparation and trial of an action in court represents his client, but he does more than that—he is there, not only as an advocate, but also as a person trusted and authorized by the state to assist the court in determining what is right between the parties before it. He cannot excuse himself by saying that his duty to his client demands that he adopt a line of conduct detrimental to the interests of the public. The state is vitally interested in seeing that justice is done and goes to great expense and provides elaborate machinery for that part of its governmental work. If attorneys at law are permitted to

resort to unscrupulous practice for the protection of the supposed rights of their clients, one of the purposes of the state will be defeated, its foundations will crumble, and life, liberty, property, and happiness will be at the mercy of lawyers who care for nothing except the advantage of their clients. The integrity of the courts and of all who assist in their work must be preserved, or the practice of law, as it is now known, will cease.

The conduct of Fred S. Macy establishes that he is unfit to practice law in this state.

He is, therefore, disbarred.