IN THE MATTER OF THE DISBARMENT OF ANTHONY P. WILSON AND A. P. TONE WILSON, JR.

No. 15,776. (100 Pac. 75.)

SYLLABUS BY THE COURT.

1. ATTORNEYS—*Disbarment—Notice.* The notice required to be served upon an accused by section 400 of the General Statutes of 1901 need not be a process within the meaning of sections 1 and 17 of article 3 of the constitution of Kansas.

2. —— *Jointly Accused—Separate Trial.* Where two attorneys at law are jointly charged of together doing acts which, if proved, justify the disbarment of each, it is not error to refuse a separate trial, but they may be tried together and one may be convicted and one acquitted, or both be convicted or acquitted, according to the evidence.

3. —— *Finding of Guilty upon One of Several Charges Sufficient.* In a disbarment proceeding, where numerous specific charges are preferred and the court finds the accused guilty upon several of the charges and enters a judgment thereon, the judgment should not be reversed if any one of the findings is sustained by the evidence. Only one penalty—disbarment—can be incurred, whether accusations be many or but one.

4. —— *Inherent Power of Courts to Disbar.* While the courts are not the curators of the morals of the bar and should not take cognizance of a solitary immoral act of a member thereof, not amounting to a crime and unconnected with his duties in court, still, as attorneys are officers of the court, the courts have the inherent power to disbar such as, by a persistent course of immorality or dishonesty, bring distrust and reproach upon the administration of justice.

Appeal from Shawnee district court; ALSTON W. DANA, judge. Opinion filed February 6, 1909. Affirmed.

STATEMENT.

THE grievance committee of the Topeka bar association filed a report in the district court of Shawnee county that they had upon complaint made an investigation of the professional conduct of Anthony P. Wilson and A. P. Tone Wilson, jr., and therein charged the defendants, informally, with the various unprofes-

sional and immoral acts afterward embraced in formal charges. This committee also recommended expulsion of the defendants from the association and the initiation of proceedings in the district court for their disbarment.

Upon the presentation of this report the district court appointed five members of the bar as a committee to prepare and prosecute an accusation against the defendants. This committee reported charging the defendants with eight specific acts involving unprofessional conduct, and including also a ninth charge embracing all of the others and charging general malpractice and dishonesty in their professional dealings. After a full and fair trial, in which eminent members of the bar were engaged upon either side, the court found the defendants guilty upon six of the charges, and not guilty as to three thereof, and, after motions in arrest of judgment and for a new trial were denied, entered a judgment of disbarment from the practice of the law in the district courts of the state as to each defendant.

*S. H. Allen, M. T. Campbell, F. H. Foster, Clad Hamilton,* and *George E. Overmyer,* prosecuting committee.

*Lee Monroe, T. D. Humphreys,* and *George A. Kline,* for appellants.

The opinion of the court was delivered by

SMITH, J.: It is first contended that the district court lacked jurisdiction of the cause for the reason that no legal process was served upon either defendant. Upon the filing, by the committee appointed by the court, of the accusations against the defendants the court made an order requiring the defendants to answer the accusations at a designated time, and directing the sheriff to serve a copy of the order and of the accusations upon each of them. The sheriff complied with this order, except that he omitted from the accusations the

verification thereof upon information and belief which was made by the members of the committee. These copies, so served, were certified to be true copies by the sheriff, but the notice to appear was not made in the name of the state of Kansas and was not issued under the hand and seal of the clerk of the court. It is contended that it is requisite to the rendition of a judgment that the defendants be brought into court by due process of law, which, under the mandate of the constitution, must issue in the name of the state of Kansas and be certified under the hand and seal of the clerk of the court. (Const. art. 3, §§ 1, 17.) It is a sufficient answer to these objections to say this was not an action but a special proceeding, and that the defendants had just such notice as the statute prescribes. (Gen. Stat. 1901, § 400.) The defendants were officers of the court and presumably learned in the law. They had access to the records and files of the court, and hence were not dependent, as laymen would have been under similar circumstances, for information as to what had actually been done in the court and what was required of them. It was said by Mr. Justice Valentine in *Peyton's Appeal,* 12 Kan. 398:

"It is true that a prosecution of this kind is to some extent a summary prosecution, . . . and therefore it may not be very formal in any of its particulars; but still the defendant must have sufficient notice of the object of the proceeding, so that he may have a full opportunity to defend." (Page 408.)

The statute requires no certification to the copy of the order of the court nor to the copy of the charges, and the verification by the committee on information and belief constitutes no part of the charge, but is only a matter of slight preliminary evidence to the court. It would have been no evidence to the defendants and would have conveyed no information to them. In short, the objection is purely technical. No statutory requirement nor any substantial right of the defendants

was violated, and we think the court was right in disregarding the objection.

It is further contended that the court had no jurisdiction to hear the case or to disbar the defendants, for the reason that chapter 67 of the Laws of 1905 vested in the supreme court alone the power to admit persons to practice in the courts of the state. The act of 1905 does not purport to repeal the express provisions of chapter 11 of the General Statutes of 1901 relating to disbarment proceedings, nor does it make any provision whatever for such proceedings, while chapter 11 expressly confers jurisdiction for this purpose upon both the supreme court and the district courts of the state. True it is that, under the common law, courts that have jurisdiction to admit attorneys have jurisdiction also to disbar them, and it has been held in some courts that the jurisdiction is correlative—that conversely a court that has no jurisdiction to admit attorneys to practice has no jurisdiction to disbar. Repeals by implication are not favored, and as a general proposition are only indulged where the legislature by the subsequent act has made substantially full provisions on the very subject of the former act. We do not think that section 397 of the General Statutes of 1901, conferring jurisdiction upon district courts in disbarment proceedings, is repealed by chapter 67 of the Laws of 1905.

It is contended that the evidence does not establish any offense by either defendant to justify the judgment of disbarment. We have examined the evidence and think the objection is not well taken.

Again, it is contended that if the district court erred in its findings against either defendant as to any one or more counts the case must as to him be reversed, even if the findings are approved as to all of the remaining counts. The separate charges are unlike the counts in an indictment or information, in that in the latter a separate penalty attaches to a conviction upon each

separate count, and these penalties are cumulative. In a disbarment proceeding, on the other hand, there is but one penalty, and the judgment of the court would have been the same had the defendants been found guilty upon one charge only instead of six charges. The judgment would therefore be sustained even if five of the six findings adverse to the defendants should be set aside. While we have some doubts as to whether one or two of the findings are sustained by the evidence, there is certainly sufficient evidence to justify the other accusations and findings and the judgment of the court.

The first charge is based upon an express statutory ground for disbarment—the neglect or refusal on demand to pay over money in the hands of the attorney due or belonging to a client. The evidence shows that the defendants accepted a note for $50 for collection and agreed to charge only a reasonable fee. The debtor resided in another town, and the defendants notified him by mail that they had the note for collection. He went to a bank and procured a draft for the amount and forwarded it to them by mail. They paid the client $25, and refused on demand to pay any more. An action was brought by the client and judgment recovered for $19.50. The fee charged was unreasonable and unconscionable and is unsupported by any fair claim of right.

The fifth charge is that the defendants carried on a scheme to defraud under the guise of doing a real-estate business. The scheme was carried out by advertising extensively that they had numerous correspondents or associated real-estate agents in many towns and places, and that they could sell real estate wherever located. They charged a retainer of $10 for each tract of land listed with them for sale, and much less than the usual commission for making the sale. They advertised the lands in several newspapers and other publications, and probably spent a few hundred

or perhaps a few thousand dollars for such advertisements. The object of the advertisements was apparently more to entice others having real estate to sell to list it with defendants than to find purchasers for what they advertised. There was evidence tending to show that they had listed four thousand tracts of real estate for sale and had received $40,000 therefor, while they apparently sold little or no land and made little or no effort so to do. Indeed, the bookkeeper for the concern, who claimed that only one of the defendants was in the real-estate business, testified: "I never knew of a case where a commission that he collected for selling real estate was booked."

The defendants claimed that A. P. Tone Wilson, jr., separately owned and conducted the real-estate business, in which Anthony P. Wilson was his attorney, and that Anthony P. Wilson owned and conducted the collection business, in which A. P. Tone Wilson, jr., was his attorney; but the court found, and we think the circumstances disclosed by the evidence justified it, that they were interested together in their various enterprises and that each was responsible for the delinquent acts charged.

We refrain from discussing in detail the remaining charges and the evidence in support thereof. Aside from the fourth charge, which relates to a blackmailing scheme to enforce collections, and the eighth, which relates to an assault and battery, the charges are of moral delinquencies. It is said that the courts are not the curators of the morals of the bar, and it is probably true that courts should not take cognizance of a solitary immoral act of a member of the bar, not amounting to a crime and unconnected with his duties in court. It is, however, one of the requisites for admission to the practice that the candidate should present evidence to the court that he is a person of good moral character, and it would be a great stigma upon an honorable profession if the members of it were power-

*In re* Wilson.

less to purge it of any who may have been improvidently received into its fold and whose after-life is offensively corrupt or whose business transactions, even outside of the courts, are characterized by dishonesty; in short, that the profession is compelled to harbor all persons of whatever character who have gained admission to it and are fortunate enough to keep out of jail or the penitentiary. This court, at least, is not prepared to say that persons of such character have a legal right to officiate as advocates of right in our courts, which ought to be and generally are temples of justice. This ground of disbarment may not be included in any of the causes therefor specified by the statute, but the court has the inherent power to require of its officers at least common honesty and decency.

We have examined all the other errors assigned and have been unable to discover anything in the proceedings materially prejudicial to the defendants. The defendants were jointly charged and we think it was proper to try them jointly. Probably some of the evidence was not such as to show one or the other responsible for some of the acts upon which some of the accusations were based, but if it was competent as to either one it was properly admitted, as one might have been found guilty and the other not guilty.

The judgment is affirmed.