No. 29,343.

In re the Disbarment of H. N. CASEBIER.

(284 Pac. 611.)

Opinion filed February 8, 1930.

*William A. Smith,* attorney-general, *R. O. Mason,* assistant attorney-general, *A. M. Keene,* of Fort Scott, *W. F. Lilleston,* of Wichita, *James V. Humphrey,*

of Junction City, *Fred Robertson*, of Kansas City, and *T. M. Lillard*, of Topeka, for the accusers.

*M. A. Bender*, of Holton, for the petitioner.

The opinion of the court was delivered by

DAWSON, J.: This is a special proceeding which questions the validity of a statute which requires this court to enter an order disbarring an attorney upon the transmission to it of a certified copy of a record of his conviction of a felony in a court of competent jurisdiction.

The record thus certified shows that H. N. Casebier was convicted of the offense of statutory rape in the district court of Jefferson county on the 8th day of October, 1929.

Casebier is an attorney at law who has practiced his profession in this state for many years.

The pertinent statute reads:

"That in the case of the conviction of an attorney at law, who has been admitted to the bar of this state, of a felony or of a misdemeanor involving moral turpitude, the clerk of the court in which such conviction is had must, within thirty days thereafter, transmit to the supreme court a certified copy of the record of conviction, and the supreme court upon receipt of such record, must enter an order disbarring such attorney. Upon reversal of such conviction, or pardon by the governor, the supreme court shall have the power to vacate such order of disbarment." (R. S. 7-110.)

The certified copy of the record of his conviction in conformity with the statute was transmitted to this court and filed on November 1, 1929. Shortly thereafter the court's attention was called thereto by the attorney-general, and on November 2, 1929, counsel for Casebier filed a motion requesting that the matter of disbarment be held in abeyance until his appeal from the judgment of conviction could be heard and determined by this court. This motion was overruled, and on November 8, 1929, it was ordered and adjudged that the name of H. N. Casebier be stricken from the roll of attorneys in this state—"and his license to practice as an attorney within the state of Kansas be and the same is hereby revoked."

On November 26, 1929, a petition for a rehearing was filed by counsel for Casebier. This was allowed and the matter set down for hearing at the present January sitting of court, at which time the cause was argued at length by counsel for Casebier and by counsel for the state and its board of law examiners.

Counsel for Casebier raises certain questions of law which will be considered in the order of their presentation.

It is first urged that the statute which requires this court to enter an order of disbarment against an attorney upon the mere receipt of a certified copy of a judgment of his conviction of a felony or misdemeanor involving moral turpitude is unconstitutional because it violates the letter and spirit of the fourteenth amendment and section 1 of the bill of rights of the Kansas constitution. The first of these provides that no state shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. The second declares that all men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness. It is suggested that the statute does not conform to due process of law and that it brings upon an attorney consequences which apply to no other citizen, not even to other professional men.

So far as due process of law is concerned, the constitutional guaranties above quoted have to do with the safeguarding of the lives, liberty and property and the inalienable natural rights of persons against infractions of the regular procedure prescribed by law for the administration of justice. None of these enumerated constitutional rights of Casebier are affected by the statute nor by our compliance with its terms. It is not contended, of course, that the statute invades the life of Casebier; but it is suggested that the operation of the statute amounts to an invasion of his liberty. It is true that the right to choose one's profession is an attribute of liberty, but the constitutional guaranties do not extend to the protection of that right regardless of limitations imposed by public policy. (12 C. J. 1199.) Counsel also suggest that the right to practice law is a form of property which is invaded by our compliance with the statute. We hold not. The right to practice law is a privilege conferred upon a specially qualified class of persons for the purpose of assisting the state and its tribunals to administer justice. It is neither property nor a property right. While disbarment is a consequence which follows the conviction of an attorney for a felony which does not apply to a blacksmith, farmer or physician convicted of the same offense, the punishment prescribed is the same. It is only because the attorney before his conviction held a privileged status which the blacksmith, farmer and

doctor did not, that his conviction brings a consequence not attaching to the conviction of these others. The loss of his right to practice law is not penal, but merely a complement to the privilege conferred upon him upon his admission to practice law. An attorney is an officer of the court, a quasi public official. To permit an attorney who has been convicted of a felony or reprehensible misdemeanor to continue to function as an officer of a court of justice would bring discredit upon the court, and tend to cause it to lose the respect and confidence of the public which it must have if it is to function at its best in the administration of justice. In the case of *In re Learnard,* 121 Kan. 596, 600, 249 Pac. 606, it was said:

"In all of the courts, both state and federal, of the United States of America, an attorney at law assists in the administration of justice. He is there to promote justice. He is a part of the machinery provided by government in the performance of its functions in administering justice. If he perverts justice, the state fails in its duty to administer justice. His conduct should be as careful and clean as that of the judge who tries the case. In other words, the state demands of an attorney at law that he be absolutely obedient to law and that his conduct be always correct. He cannot escape disbarment by following that line of conduct which barely keeps the citizen out of jail." (p. 600.)

In 6 C. J. 569 it is said:

"The right to practice law is not a natural or constitutional right, but is a privilege or franchise subject to the control of the legislature, and limited to persons of good moral character with special qualifications ascertained and certified as prescribed by law. The right to practice law is not 'property,' nor in any sense a 'contract,' nor a 'privilege or immunity,' within the constitutional meaning of those terms. It cannot be assigned or inherited, but must be earned by hard study and good conduct."

The argument is advanced that the matter of admission and disbarment of attorneys is a judicial function and not within the legislative prerogative. That is partly correct. While it is inherently a judicial function of courts to control the conduct of attorneys and within limits courts have power to say who may and who may not practice before their tribunals (*In re Gorsuch,* 113 Kan. 380, 384, 385, 214 Pac. 794), yet it is the indisputable prerogative of the legislature to declare the public policy of the state; and it is a highly pertinent and proper exercise of that prerogative for the legislature to declare that only persons of special qualifications and of good moral character can be admitted to practice law, and that if that status of good moral character is shown to have been lost, as by

proof of conviction of a felony or misdemeanor involving moral turpitude, the right to practice law is at an end.

Another constitutional point raised by counsel is that although this court's jurisdiction is wholly judicial, original or appellate, this statute requires the court to perform a ministerial act. This is too attenuated. The court has incidental duties to perform which are requisite to the effective exercise of its judicial functions, although they are not in themselves strictly judicial in character. Thus the court elects a clerk, appoints a bailiff, functions as a board of directors of the state library, appoints a board of law examiners, and the like. Considered independently, these duties would appear to be executive and administrative rather than judicial; but since the court's judicial duties could not be efficiently discharged without a clerk, without a library, without lawyers of proper qualifications, it is entirely in keeping with the constitutional theory of three departments of government that such incidental matters should be vested by the legislature in the department of government most vitally concerned therewith—the judiciary. In 1 Goodnow's Comparative Administrative Law, 29, it is said:

"Although the general rule may be that the courts shall be confined in the main to the decision of controversies between individuals, nevertheless in many instances the needs of government make it seem advisable to intrust the courts with functions somewhat administrative in character. . . . Thus in the commonwealths of the United States and England, where the exceptions to the logical adoption and application of the theory of the separation of powers are numerous, judicial officers from time immemorial have been intrusted with the discharge of executive or administrative functions."

If it be conceded, as we think it must, that the legislature may vest in this court the power to admit properly qualified persons to practice law, then the correlative power to disbar disqualified persons must also exist (*In re Wilson,* 79 Kan. 450, 453, 100 Pac. 75), and the incidental duty of striking from the roll of practicing attorneys the name of one who has been convicted of a *malum in se* criminal offense may not improperly be vested in the court. But there is another answer to the particular objection to the statute just discussed. When it is shown that an attorney has been convicted of a crime which gravely reflects on his moral character, the court has inherent power to disbar him. (*In re Smith,* 73 Kan. 743, 85 Pac. 584; *In re Gorsuch,* 113 Kan. 380, 214 Pac. 794.) And it has that power none the less because the statute says it has such power and directs its exercise. If Casebier cared to dispute the

authenticity of the journal entry of judgment which informs this court of his conviction of the crime of statutory rape, other questions than those presented here might require determination. But here the certified copy of the judgment is not challenged, so if we are not to relax the moral standards of the bar Casebier should be dropped from the roll of attorneys, statute or no statute. In that view of the matter—and we think it is both sound and tenable—the court's duty to enter the order of disbarment is neither arbitrary, capricious nor unjust.

In *In re Kirby*, 10 S. Dak. 322, 330, 331, a substantially similar proceeding, it was said:

"We are dealing with the effect of a judgment in a criminal action upon the rights of the defendant therein to practice law after conviction, while such action is pending in an appellate court upon writ of error. . . . [The statute's] language is as follows: 'When he has been convicted . . . the record of conviction is conclusive evidence.' Comp. Laws, § 473. The question of guilt is not involved. Conviction is cause for disbarment or suspension. The fact of conviction is alone in issue, and the record, the legislature declares, shall be conclusive evidence of that fact. The material inquiry is simply this: Has the accused been convicted? . . . The existence of that fact is sufficient cause for suspension or disbarment."

On rehearing the court held:

"When an attorney has been convicted of crime in the United States district court, it is a sufficient cause for his disbarment as an attorney by a state court, notwithstanding an appeal has been taken and is pending from the conviction in the United States court." (*In re Kirby*, 10 S. Dak., 414, syl. ¶ 2.)

In *In re Wilson*, supra, it was said:

"It is said that the courts are not the curators of the morals of the bar, and it is probably true that courts should not take cognizance of a solitary immoral act of a member of the bar, not amounting to a crime and unconnected with his duties in court. It is, however, one of the requisites for admission to the practice that the candidate should present evidence to the court that he is a person of good moral character, and it would be a great stigma upon an honorable profession if the members of it were powerless to purge it of any who may have been improvidently received into its fold and whose after life is offensively corrupt or whose business transactions, even outside of the courts, are characterized by dishonesty; in short, that the profession is compelled to harbor all persons of whatever character who have gained admission to it and are fortunate enough to keep out of jail or the penitentiary. This court, at least, is not prepared to say that persons of such character have a legal right to officiate as advocates of right in our courts, which ought to be and generally are temples of justice. This ground of disbarment may not be included in any of the causes therefor specified by the statute, but the court

has the inherent power to require of its officers at least common honesty and decency." (p. 455.)

It is finally urged that the statute should not be enforced "before conviction is final," by which counsel doubtless mean until, if ever, Casebier prosecutes his appeal in the criminal case to the last extremity and until the court of last resort affirms the judgment of conviction. That argument is not persuasive. A judgment of conviction is final when the tribunal in which it is rendered gets done with it. (*State v. Eisminger*, 124 Kan. 464, 260 Pac. 661.) On appeal neither this court nor the supreme court of the United States will have anything to do about Casebier's guilt, but only whether errors of substantive or procedural law have been committed to his prejudice. And the statute takes care of that situation, as indeed the court might do without the statute. The pertinent provision reads:

"Upon reversal of such conviction, or pardon by the governor, the supreme court shall have power to vacate such order of disbarment." (R. S. 7-110.)

The court holds that the order of disbarment of H. N. Casebier must stand as entered, and the motion to set it aside and reinstate him must be denied.

It is so ordered.