No. 32,412

CLAUDE I. DEPEW, Z. WETMORE, JEAN VILLEPIGUE, R. BOWLAND RITCHIE, DALE BRYANT, RAY TINDER, DONALD I. MITCHELL and HARVEY C. OSBORNE, *Appellees*, v. THE WICHITA ASSOCIATION OF CREDIT MEN and M. E. GARRISON, *Appellants*.

No. 31,999

THE STATE OF KANSAS, ex rel. CLARENCE V. BECK, Attorney General, *Plaintiff*, v. THE WICHITA ASSOCIATION OF CREDIT MEN and M. E. GARRISON, *Defendants*.

(49 P. 2d 1041)

Opinion filed October 5, 1935.

*Fred Hinkle*, of Wichita, and *W. L. Cunningham*, of Arkansas City, for the appellants.

*H. W. Hart, George Siefkin* and *Austin M. Cowan*, all of Wichita, for the appellees; *Clarence V. Beck*, attorney general, for the state of Kansas.

The opinion of the court was delivered by

HUTCHISON, J.: We have here two cases involving the same subject matter that by stipulation are to be considered together. One comes to this court by appeal, and the other is an action in quo warranto brought originally in this court on the relation of the attorney general of the state.

The first case is an injunction action commenced in the district court of Sedgwick county by Claude I. Depew and eight other members of the bar of Sedgwick county and members of the Sedgwick County Bar Association, on behalf of themselves and all other practicing attorneys of Sedgwick county, to restrain and enjoin the defendants from the illegal practice of the law. The defendants are the same in both cases, being The Wichita Association of Credit Men, Incorporated, and M. E. Garrison. The injunction case was commenced by filing the petition therein on July 12, 1933. It was tried in the third division of the district court of Sedgwick county commencing on May 17, 1934, and judgment was rendered therein in favor of the plaintiffs, and injunction was granted February 13, 1935, from which judgment an appeal was regularly taken by both

defendants, and a cross appeal was also taken by the plaintiffs upon rulings adverse to them.

The quo warranto case was filed in this court on May 3, 1934, just a few days before the commencement of the hearing of the evidence in the injunction case in the district court. A stipulation has been filed permitting the evidence in the injunction case to be considered as evidence in the quo warranto case. Depositions were also taken and filed in the quo warranto case.

Appropriate answers of general and special denial were filed by the defendants in both cases. Findings of fact and conclusions of law were requested by both parties to be made in the injunction case and were made, and an injunction order was made against the defendants restraining and enjoining them and their agents from doing or performing certain acts held by the findings and conclusions to be practice of law, but was not allowed as to some other acts of which the plaintiffs complained.

The main legal questions involved in the injunction action, as stated by the appellants are: (1) What is practicing law? and (2) What acts or business of defendants, or either of them, come within the term "practicing law," and which do not?

In the review of this injunction case we are not confronted with the question of the jurisdiction of the district court in matters of unlawful practice of law, as we were in a similar case brought by the same plaintiffs against the Wichita Retail Credit Association, appealed to this court and opinion reported in 141 Kan. 481, 42 P. 2d 214, nor the questions as to injunction being the proper remedy and the right of the plaintiffs to maintain such an action, because on review of the injunction case at bar we have the quo warranto case associated with it and the two are being considered together.

The main questions involved in the quo warranto case, as claimed by the appellants, are:

1. What is the true scope of the charter powers granted to defendant association by its charter?

2. Are these powers within the authorized purposes of the charter act?

Two preliminary legal questions applicable to both cases are presented by the appellants. The first one is that the matter of defining the term "practicing law" and prescribing the qualifications of those entitled to do so is a legislative function and not judicial, citing R. S. 7-102 as the only legislative expression as to who shall

be admitted to practice law, and their qualifications, and that the legislature at no time has attempted to define the term "practicing law."

R. S. 7-102 is as follows:

"Any citizen of the United States who has read law for three years in the office of a regularly practicing attorney, or who shall be a regular graduate of the law department of the university of Kansas or some other law school of equal requirements and reputation, and who satisfies the supreme court of this state that he possesses the requisite ability and learning and that he is of good moral character, may be admitted to practice in all the courts of this state upon taking the oath prescribed."

Such statutory regulation is effective and directory when in accord with the inherent power of the judiciary because of the licensees being officers of the court. (*In re Casebier,* 129 Kan. 853, 284 Pac. 611; *In re Hanson,* 134 Kan. 165, 5 P. 2d 1088; *State, ex rel., v. Perkins,* 138 Kan. 899, 28 P. 2d 765.) Of course a subsequent session of the legislature could repeal or amend such section, and could also, with due regard to such inherent power as to the qualifications and conduct of those authorized to appear before the court as officers thereof, very helpfully define what is meant by the term practicing law. But no such definition has been given us by our legislature, and it is therefore a question for construction as to the intent of the legislature. "The proper construction of a statute is a question for the court." (59 C. J. 944.)

The other preliminary legal question urged by the appellants is that to deny these defendants by statute, or construction thereof, or both, of the right and privilege to carry on and transact the business which the evidence shows them to be carrying on and transacting, would be to deny them the rights, privileges and immunities guaranteed to them by the constitution of the United States, particularly the fifth and fourteenth amendments thereto (depriving of life, liberty or property without due process of law, and equal protection of the law); would also be in violation of section 10, article 1, of the United States constitution (by impairing the obligation of a contract); and also in violation of section 2 of the bill of rights of the state of Kansas (by granting special privileges), and section 11 of the bill of rights of the state of Kansas (by depriving them of liberty of speech). We are not cited to any Kansas authority in support of this proposition.

We recall Kansas decisions holding that the rights conferred upon an attorney-at-law in this state are not property rights, but rather a license or privilege. In *In re Casebier*, 129 Kan. 853, 284 Pac. 611, it was held:

"Counsel also suggest that the right to practice law is a form of property which is invaded by our compliance with the statute. We hold not. The right to practice law is a privilege conferred upon a specially qualified class of persons for the purpose of assisting the state and its tribunals to administer justice." (p. 855.)

The Casebier case was followed and approved in *In re Hanson*, 134 Kan. 165, 5 P. 2d 1088.

In the case of *State, ex rel., v. Perkins*, 138 Kan. 899, 28 P. 2d 765, it was held:

"This court has constitutional, statutory and inherent jurisdiction to inquire by what authority one assumes to practice law in this state and to make appropriate orders relating thereto. . . ." (Syl. ¶ 2.)

The same conclusion has been reached as to licenses and privileges granted to men in other professions, as physicians, dentists, etc. (See *State v. Creditor*, 44 Kan. 565, 24 Pac. 346; *State v. Wilcox*, 64 Kan. 789, 68 Pac. 634; *Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247; *State v. Johnson*, 84 Kan. 411, 114 Pac. 390; and *State, ex rel., v. Mohler*, 98 Kan. 465, 158 Pac. 408.)

We are unable to agree with the contention of the appellants on either of these two preliminary legal propositions.

The trial court made the following findings of fact and conclusions of law in the injunction case:

"FINDINGS OF FACT AND CONCLUSIONS OF LAW

"I

"Plaintiffs are duly licensed attorneys-at-law engaged in the practice in Wichita, Kansas. They filed this action on July 12, 1933, against The Wichita Association of Credit Men, which is a corporation chartered under the laws of Kansas but without authority to practice law. Also against Mr. M. E. Garrison, who is executive secretary and manager of the corporation. None of the salaried employees of the association, or M. E. Garrison personally, is a licensed practicing attorney.

"The charter of the association states that it is organized for profit but as actually conducted the receipts and expenditures equalize each other so that no profit is paid by the association. The association was organized in 1913 and since that time has taken in large sums of money each year, all of which was paid out for expenses and for employees, Mr. Garrison receiving as high as $10,000 a year salary. As many as twenty-two persons have been in the em-

ploy of the association. There are a number of departments in the association but only a portion of its work is attacked in this case.

"For 1933 Mr. Garrison received a salary of $7,500, with the agreement that he should receive $10,000 if the association earned it and 50 percent of the earnings above that.

## "II

"FACTS. The association as one portion of its work conducts a collection department for its members and affiliate members, also other items which may be turned in. In a general way the collection department is conducted similarly to the usual collecting agency, using the Commercial Law League of America rates as a basis of charge. Personal collectors are sent out and the usual number of duns and so forth.

"CONCLUSIONS. Such a commercial collection department as handled in this way does not constitute the practice of law.

## "III

"FACTS. In handling collections during 1932 and a portion of 1933 this department, under the direction of Elmer Garrison, Jr., son of the defendant in this action, prepared a mimeographed bill of particulars and filed approximately 25 actions for various parties in justice of the peace courts in this state. In each case the mimeographed copy was filled in with the names of the parties, the court, necessary dates and amounts, signed by the plaintiff, by Elmer Garrison, Jr., as agent for the plaintiff. These were filed with justices and if trial was unnecessary an attorney was not employed. If not settled an attorney was employed in the cases.

"Likewise, under the direction of Elmer Garrison, Jr., an employee of the association, there were prepared what were called intervening petitions, being mimeographed instruments which were filed in cases in the district court of Sedgwick county, Kansas, by the said Garrison, he having filled in the title of the case and the necessary information constituting an intervening petition similar to plaintiff's exhibit 4 in this action, with a statement of account attached. Exhibit 4 was filed on the 23d day of March, 1934.

"CONCLUSIONS. Preparation and filing of such bills of particulars and intervening petitions constitutes practice of law.

## "IV

"FACTS. Up until the change of the Commercial Law League rules at the beginning of 1934 it was the custom of the association in handling accounts to collect an attorney fee of $7.50 from the forwarder of the claim in addition to the usual percent collection fee. The association turned such accounts over to attorneys at the various points of collection, usually to the same attorney in Wichita, and at other points to such an attorney as was selected from the lists, and doing so retained $2.50 of each $7.50 of attorney or suit money fees. The gross on such attorney or suit money fees amounted to about $2,000 per year, of which the association kept one third. About January 1, 1934, in conformance with the Commercial Law League rules the association stopped keeping the $2.50.

"CONCLUSIONS. Such a practice was improper and not in accord with good ethics, and the furnishing of such business to an attorney and collection and retention of a portion of the fee or the percentage allowed for collection, constituted the practice of law.

"V

"FACTS. The defendant Garrison, for himself and the association, used blanks and sent out solicitations of proofs of claims and powers of attorney in bankruptcy proceedings and holding such powers of attorney voted for and elected himself as trustee in cases pending in the bankruptcy division of the federal court. As trustee he turned over accounts for collection to the collection department of the association and paid collection fees for the same. He also voted claims in the bankruptcy court and did such other things as a holder of a power of attorney is accustomed to do.

"CONCLUSION. This is set up as a part of the general method of doing business of the association, and being in the federal court this court is of the opinion that it has no jurisdiction over the same, and no conclusion of law is made.

"VI

"FACTS. One department of the work of the association that has been of considerable importance has been the making of agreements or assignments for the benefit of creditors, and the use of what is known as a trust mortgage, whereby M. E. Garrison as trustee liquidates businesses, makes settlements with creditors, instead of the usual bankruptcy procedure in the federal court or receivership in state courts. Under such agreements as plaintiffs' exhibit No. 40 the business is not brought into court for liquidation but is handled outside by Garrison as trustee.

"An owner of a business in financial difficulties is seen by a representative of the association or he calls upon the association or is sent in by a creditor or someone else interested. It is the custom of M. E. Garrison to advise with him, explain to him the difference between such an arrangement and bankruptcy proceedings and inform the business man what he considers to be the advantages of the liquidation without bankruptcy. While Mr. Garrison does not prevent him from seeing his attorney he attempts by statements or representations to show him the advantages of the plan being outlined and if the prospect is agreeable has him sign a contract. Plaintiff's exhibit '12' among other things provides for the taking of an audit of the business at $25 per day, paying a commission for supervising and adjusting the claims of the creditors. The contracts used in these cases were prepared some years ago by a now distinguished Wichita attorney. Such papers, agreements and so forth as are needed for the complete handling of the business in this liquidation are furnished by the association, prepared blanks being used. The contracts prepared and signed and the resulting work on the part of the representatives of the association results in complete liquidation of the individual business, for which the association receives compensation. The liquidating merchant receives all the necessary advice through Mr. Garrison and officers of the association.

"Conclusions. The liquidation of a business by this method, the contracts and forms used and the advice given with services which require legal skill and knowledge constitutes practice of law.

"VII

"Facts. The association, through its representative in the handling of various kinds of business, and in its various departments, uses blank notes, drafts, blank mortgages and similar blanks obtainable at any bookstore, and the filling out of which does not require any particular legal knowledge. No specific charge is being made for these items but is a part of the general business and incident thereto.

"Conclusion. The use of such blanks unless specific advice of legal rights is given at the time of their use and upon which there is no evidence in this case would not constitute the practice of law.

"VIII

"Conclusion. Being without authority to practice law, all the acts and practices as heretofore found to constitute practice of law are illegal.
.  .  .  .  .  .  .  .  .  .  .  .  .  .

"Defendants have continued filing intervening petitions in the district court during the pendency of this action and there is danger that they may continue to do so. They also continue to threaten to continue the liquidation of businesses as set out in finding number 6.

"Injunction is a proper remedy, and the defendants should be and are enjoined from doing either of said acts as set out in the preceding paragraph or in findings 3 or 4 or any other acts herein found as constituting the practice of law.

"Injunction should also run against all of the agents, servants and employees of each of the defendants."

Thereafter the court rendered the following injunction order:

"Thereupon, on the 8th day of December, A. D. 1934, it is by the court ordered, adjudged and decreed that the defendant, The Wichita Association of Credit Men, Inc., all of its officers, agents, servants and employees, and each of their successors, and M. E. Garrison, his agents, servants and employees and each and every one of them be and hereby are restrained, inhibited and permanently enjoined from severally and jointly doing or performing any of the following acts:

"First. From preparing or filing in any district court in this state or before any justice of the peace of this state for or on behalf of another any pleading or other document. From appearing for or representing another in any manner in any action or proceeding pending in any district court in this state or in a court of any justice of the peace in this state.

"Second. From receiving and furnishing of claims or collections to an attorney upon which the defendant or defendants is or are to receive a portion of the collection either at the beginning or as a percentage allowed upon the collection either directly or indirectly.

"Third. From preparing, furnishing or causing to be prepared and furnished in connection with the assignment, transfer or pledging of a debtor's

business or property or any part thereof, any agreement or assignment for the benefit of creditors, or any trust mortgage, or any agreement for the supervision of the debtor's business, or any chattel mortgage, deed or lease, or other instrument of a similar nature or character in connection with such transaction whereby legal rights are affected or determined, and from giving advice as to legal rights under any such instrument or instruments; from the assignment or transfer of property for the benefit of creditors by whatever means or instruments used by which legal rights are affected or determined and from giving legal advice thereon. This order is not to apply to use by the defendants in their business of blank notes, drafts and similar blanks ordinarily obtainable at a bookstore and the filling out of the same where no legal skill or knowledge is required and where no advice as to legal rights in connection therewith is given and no compensation or remuneration is received therefor, either directly or indirectly."

We shall consider together the two questions involved, as stated by appellants, viz.: What is practicing law, and what acts or business of defendants, or either of them, come within the term "practicing law" and which do not? The appellants do not especially find fault with the findings of fact as made by the trial court, but they argue most strenuously that the facts which the evidence shows, and some of which the trial court found, do not justify the conclusions reached by the trial court. We find that there was sufficient evidence to support the findings. We shall therefore direct our special attention to the arguments for and against the conclusions of law, acknowledging in the first place that we have no definition of the practice of law given us by any legislative enactment, and further recognizing that the definitions given by legislative enactments in the few states where it has been done are very different, and, also recognizing that it is quite difficult to harmonize views of text writers on the subject, and that some of the court opinions go farther than others where there is no statutory definition.

The many authorities cited by counsel for appellants do not present any new or different conclusion or reasoning from those presented and exhaustively considered in the recent case of State, ex rel., v. Perkins, 138 Kan. 899, 28 P. 2d 765, which concerned facts in many ways similar to those in the case at bar, and it can safely be said of this case, as it was said of that case, that this is not a boundary-line case and therefore the minute, detailed and discriminating verbiage of a definition is not necessary to apply to the facts presented and found in the case at bar. These facts can be properly classed as more or less general because they appear to be, generally speaking, the things that most people know are being done by attor-

neys-at-law in their professional work. In the opinion in the Perkins case it was said:

"This brings us to the question of what is practicing law. The general meaning of the term is of common knowledge, although the boundaries of its definition may be indefinite as to some transactions. We shall not bother with boundary-line distinctions here, for this is not a boundary-line case. A general definition of the term frequently quoted with approval is given in *Eley v. Miller*, 7 Ind. App. 529, 34 N. E. 836, as follows:

" 'As the term is generally understood, the practice of the law is the doing or performing of services in a court of justice, in any matter pending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be pending in a court. (p. 535.)'

"In *The People v. Peoples Stock Yards Bank*, 344 Ill. 462, it was said:

" 'In litigated matters it involves not only the actual representation of the client in court, but also services rendered in advising a client as to his cause of action or defense. The practice of law also includes the giving of advice or rendering services requiring the use of legal skill or knowledge. . . .' " (p. 907.)

After citing many authorities bearing on the subject, it is further said in this opinion on page 908 that—

"One who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law."

Defendants insist that many changes have recently taken place in the active business and conduct of the legal profession, that attorneys are not pursuing the same lines as they formerly did, citing particularly the collection of claims, notes and accounts; that some of the earlier lines of business of the profession have shifted to other agencies that are better equipped to handle them, and that the profession has failed to keep abreast of the development of modern business. This argument was most certainly recognized by the trial court in the making of the findings of fact and conclusions of law Nos. 2 and 7 concerning the making of ordinary personal collections and filling out ordinary blanks obtainable at any bookstore, without the giving of advice thereon or making any charge therefor, which conclusions were in favor of the defendants, and they are affirmed by this court.

The defendants argue at great length the merits and benefit to the community of the defendant association of credit men. We have no inclination to question those assertions in the least, but they will

not justify the association in going farther than those meritorious and commendable activities by encroaching upon the professional work and privileges of others. They cite numerous instances of similar organizations doing the same line of business the defendants are charged with doing, and coöperation being given them in such work by thousands of attorneys in the United States—being on their commercial lists. But neither of these grounds would justify the association in the case at bar going beyond its legal authority into the work of another profession. Defendants cite the thirty-fourth section of the code of professional ethics of the American Bar Association as not condemning the splitting or division of commissions for collections of liquidated commercial claims by a lawyer with one who is not a lawyer, but the next section in the code has an important bearing thereon by requiring that there be no intervention between the client and the lawyer so as to prevent the personal and direct relation between the two.

Defendants charge the legal profession with attempting by these actions to maintain a monopoly and prevent competition. That may be good retaliatory argument, but it cannot affect a licensed privilege while it legally exists.

Defendants complain seriously of the third conclusion reached by the trial court and the allowing of an injunction against the doing of the acts enumerated in the third finding about an employee of the association bringing collection actions in the justice of the peace court and signing the bills of particulars as the agent of the plaintiffs and also filing intervening petitions in the district court. The defendants admit the facts and say none of the officers of the association knew such was being done, and they ordered it discontinued as soon as they learned of it, and they testify that it has not been done since and they promise it will not be done again. On the strength of this promise they claim the necessary element of threat or danger in an injunction case is lacking, and therefore no injunction can be granted to cover that finding. This general principle of law may be correct, but the feature of reliance on a promise, if it were a personal case, is different from reliance upon the promise of a corporation and its officers and manager, all of whom may be replaced and their successors may feel differently about obeying such a promise. Courts are not required to accept and rely upon promises under all circumstances, and unless they do so rely thereon, the danger of repetition of a wrong may be prevented by injunction.

The defendants maintain that all the things with which they were charged were fully within the true scope of the charter power granted the association. They do not claim that the association has a right to practice law, and of course it could not be so authorized; neither is the other defendant an attorney-at-law. So their defense to the second case is the same as to the first, that the things they have been doing under their charter are not within any reasonable definition of practicing law. If this court should affirm the conclusions of the trial court in the injunction case, to the effect that the defendants were, in doing certain things enumerated in the findings, practicing law, that will not necessitate a forfeiture of the charter, because it does contain provisions which will fully justify its retention for the performance of such legal and proper purposes. In other words, if the association may have gone further than its charter rights permitted, the charter will not necessarily have to be forfeited, but such matter will be in the discretion of the court.

Numerous other points and arguments are contained in the briefs of defendants, which have been carefully considered, but deemed not necessary to be separately enumerated and discussed in the opinion.

The plaintiffs also on their cross appeal in the injunction case urge as errors of the trial court its failure to make many of the findings and conclusions as submitted by them, and they particularly urge as an error the failure of the trial court to make a conclusion of law as to the facts in finding No. 5, which covers the actions of the defendants in bankruptcy cases in the federal court, where the court assigned as a reason for not doing so that the trial court had no jurisdiction over such matters. General Order No. 4 in Bankruptcy, promulgated by the United States supreme court, requires substantially all the activities in such proceedings to be presented and handled by the parties interested, in person or by an attorney, which includes some of the acts enumerated in finding No. 5. This general order is part of section 53 of the United States Code Annotated under Title 11—Bankruptcy, and is as follows:

"Proceedings may be conducted by the bankrupt or debtor in person in his own behalf, or by a petitioning or opposing creditor; but a creditor will only be allowed to manage before the court his individual interest. Every party may appear and conduct the proceedings by attorney, who shall be an attorney or counsellor authorized to practice in the district court. The name of the attorney or counsellor, with his place of business, shall be entered upon the docket, with the date of the entry. All papers or proceedings offered by

an attorney to be filed shall be indorsed as above provided and orders granted on motion shall contain the name of the party or attorney making the motion. Notices and orders which are not, by the act or by these general orders, required to be served on the party personally may be served upon his attorney."

Rule two of the United States district court for the district of Kansas, which is now in effect and was at the time of filing the petition in this case, is as follows:

"RULE Two. *Admission of attorneys.* Any person admitted to practice law in the supreme or any circuit or district court of the United States, or in the highest court of general jurisdiction in any state or territory, on motion of a member of the bar of this court in good standing, made in open court, shall be admitted to practice law in this court upon taking the following oath:"

In the opinion in the case of *Savings Bank v. Ward,* 100 U. S. 195, at page 199, it was said:

"Persons acting professionally in legal formalities, negotiations, or proceedings by the warrant of authority of their clients may be regarded as attorneys-at-law within the meaning of that designation as used in this country. . ."

In *In re Scott,* 53 F. 2d 89, it was said:

"The examination of the bankrupt and the participation in the election of a trustee by others than the creditor himself is the practice of law as generally understood and is so recognized by the courts. See *In re Looney* (D. C.) 262 F. 209, and *In re H. E. Ploof Machinery Co.* (D. C.) 243 F. 421. (p. 93.) (See, also, *In re N. S. Dalsimer & Co.,* 56 F. 2d 644.)"

In 6 C. J. 583 it is said:

"A court has jurisdiction to disbar an attorney for misconduct committed outside of the state or in the court of another county. So also a state court may discipline counsel for unprofessional acts committed in the federal courts or before the United States land office."

In 2 R. C. L. 1098 it is said:

"A state court may disbar an attorney for an act committed in respect to proceedings in a federal court."

In *In re Minner,* 133 Kan. 789, 3 P. 2d 473, it was held in the first paragraph of the syllabus that—

"Being found guilty of a felony under a federal statute in a federal court of the district of Kansas subjects an attorney at law, admitted to the bar of this state, to the automatic disbarment provisions of R. S. 7-110, the same as being found guilty of a felony under a state statute in a Kansas state court of record."

And in the opinion, on page 792, it was said:

"There is nothing in our statute, R. S. 7-110, to indicate that any distinction or difference was intended by the legislature to be made with reference to the felony being one under a federal or state statute."

We are of the opinion that the trial court did have jurisdiction in the matter of proceedings enumerated as taking place in bankruptcy proceedings in the federal court, and could and should have made an appropriate conclusion which should have been to the effect that such acts on the part of the defendants as enumerated in finding No. 5 were the practice of law and such acts should therefore have been included in the injunction order. We approve of all the other conclusions made by the trial court as copied herein and hold that the acts, transactions and conduct of the defendants enumerated and contained in findings Nos. 3, 4, 5 and 6 are within the general understanding and definition of practicing law and should be enjoined, and also that the same ruling should apply in the quo warranto case to the effect that all of the findings made by the trial court, except findings Nos. 2 and 7, are the enumeration of things that are beyond the power conferred by the charter of defendants and should not be further practiced, but we do not order the charter to be forfeited.

All the motions of both plaintiffs and defendants in the injunction case, including the motions for a new trial, are overruled except the motion of the plaintiffs as to conclusion No. 5, and the judgment of the trial court in the injunction case is modified as above prescribed as to No. 5, and otherwise the judgment of the trial court is affirmed and the cause is remanded with instructions to include items in finding No. 5 in the injunction order, and with such modification the judgment is affirmed.

The order in the quo warranto case is that findings and conclusions as modified and approved in the injunction case be adopted in the quo warranto case, and that such practices as are therein enjoined be held to be beyond the charter rights and powers of the association, and that it and its officers and agents refrain from further exceeding its charter provisions, but that the charter be not forfeited.